THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.*
THE STATE OF MARYLAND.

*Right of the State to Authorize the Construction of the Balti-*
*more and Potomac Railroad—Validity of the. Contract*
*between the State and the Baltimore and Ohio Railroad*
*Company, for the payment to the former by the latter of one-*
*fifth of the Passenger fares received on its Washington*
*Branch—The extent of the Washington Branch as embraced*
*by the Contract.*

The 8th section of the Act of 1831, ch. 330, which was supplementary to the
Act of 1830, ch. 158, by which power had been given to the Baltimore and
Ohio Railroad Company to construct the Washington Branch Road, contains
these words: "And if the said company shall not complete the said road
with at least one set of tracks, so as to be used and travelled on from the
commencement of it, as authorized by this Act, to the line of the District of
Columbia, within three years after the commencement of the actual con-
struction, the Legislature hereby reserve the right to incorporate another
company, or to authorize any other persons in their discretion, to lay out
and make a railroad on and over any ground and in any direction between
the City of Baltimore and the District of Columbia, anything in this Act or
in the Act to which it is a supplement to the contrary notwithstanding."
The scheme devised by the Act of 1831, ch. 330, proved a failure, and it
became necessary for the Legislature to pass the Act of 1832, ch. 175, which
was accepted by the company, and under which the Washington Branch
was constructed. By this Act the State relinquished valuable rights which
she had under the previous laws, and by section 8, the company contracted
to pay the State one-fifth of the passenger fares on the Washington Branch.
Section 12 provided, That the time limited by the 8th section of the Act of
1831, ch. 330, for the commencement and completion of the road should be
extended to the times therein named, and omitted the reservation of the right
to authorize the construction of another road contained in the 8th section of
said Act of 1831. Section 15 repealed all parts of previous legislation incon-
sistent with the provisions of the Act of 1832. In an action brought by the

Balt. & Ohio R. R. Co. *vs.* The State.

State against the company to recover one-fifth of the passenger fares on the Washington Branch of its road, it was HELD:

1st. That the 8th section of the Act of 1831, ch. 330, did not create a contract prohibiting the State from authorizing the construction of any other railroad between the cities of Baltimore and Washington.

2nd. That the contract on the part of the defendant to pay the one-fifth of the passenger fares referred to in the 8th sec. of the Act of 1832, was entered into by that Act in consideration of valuable aid and benefits conferred by the State, and was independent of any condition contained in the Act of 1831, even if that Act could be construed as containing any condition or surrender or limitation of the power of the State to authorize the construction of a rival railroad.

3rd. That the Acts of 1830, ch. 158, 1831, ch. 330, 1832, ch. 175, 1836, ch. 261, 1844, ch. 103, 1845, ch. 370, and 1852, ch. 328, must be construed as making the contract, with reference to the one-fifth payable to the State, embrace the whole road between Baltimore and Washington.

4th. That while in one sense the Washington Branch began at the Relay House, nine miles from Baltimore, (the road between that point and Baltimore having before been constructed and in actual operation as a part of the main line of the Baltimore and Ohio Railroad Company then extending west towards the Ohio,) it was obvious from a careful reading of said Acts of Assembly that the contract of the defendant related to and embraced also that portion of the road between the Relay House and Baltimore, and the one-fifth secured to the State was one-fifth of the passenger fares upon the whole road between Baltimore and Washington.

5th. That with respect to the portion of the road within the District of Columbia, it was also comprehended in the terms of the contract.

6th. That although the road within the District was authorized by, and constructed under, the Acts of Congress, there was no doubt of the power of the defendant to include it within the terms of the contract, nor was there any well founded constitutional objection to the contract on that account.

7th. That even if the Acts of Assembly were in conflict with the Acts of Congress, in requiring the company to collect higher rates of fare in the District than the Acts of Congress allowed, (which was not the case,) this would afford no defence to the action.

APPEALS from the Circuit Court for Howard County. The cases are stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the following prayer:

The plaintiff prays the Court to determine, that if they shall find that the defendant accepted the terms of the several Acts of Assembly which have been offered in evidence, relating to the rate of fare to be received by the defendant for the transportation of passengers upon or over its road between the cities of Baltimore and Washington, and relating to the payment by the defendant to the State of one-fifth of the whole amount which might be received by it for such transportation; and that the defendant between the 1st of January, 1870, and the 30th of June, 1870, received any amount of money for such transportation, then the plaintiff is entitled to recover in this action a sum equivalent to the one-fifth of such whole amount, with such interest, (if any,) from and after the 4th day of July, 1870, as the Court shall see fit to find and allow.

The plaintiff also offered the following exception to evidence:

The plaintiff excepts to the admissibility, competency and relevancy of all the evidence which has been introduced, (subject to exception,) by the defendant in respect to the chartering, construction, operation and receipts of the Baltimore and Potomac Railroad Company, and the alleged diminution of the receipts, business or profits of the defendant by reason thereof.

And also to all the evidence introduced by the defendant, (also subject to exception,) for the purpose of showing or tending to show, establish or set up any other basis of liability of the defendant to the plaintiff, than the entire gross receipts of the defendant, from fares paid for the transportation of way and through passengers on the whole line from Baltimore to Washington.

The plaintiff prayed the Court to exclude the said evidence and every part thereof from its consideration.

And the defendant offered the following prayers:

1. The defendant prays the Court to determine that the several Acts of Assembly offered in evidence, under which the branch road to Washington was constructed, were a contract binding the State not to incorporate another Company, with power to construct a railroad between Baltimore and the District of Columbia, should the defendant complete and operate the said branch road in the time and in the manner prescribed in the eighth section of the Act of 1831, ch. 330, and the twelfth section of the Act of 1832, ch. 175, and should the Court find that the defendant has performed its part of the contract created by the Acts aforesaid in this particular, then the subsequent incorporation of the Baltimore and Potomac Railroad Company was an act impairing the obligation of said contract, and was in violation of the Constitution of the United States; and that to permit the State to recover in the present action, would not only be giving effect to an unconstitutional law, but would be allowing the State to take advantage of its own wrong.

2. The same as No. 1, with the following addition: provided, the Court shall further find, that the operation of the Baltimore and Potomac road since it was opened, has lessened the number of passengers that the defendant would otherwise have transported between the cities of Baltimore and Washington, in which event their finding must be for the defendant.

3. The same as No. 1, with the following addition: provided, the Court shall further find, that the operation of the Potomac road since it was opened, has lessened the number of passengers that the defendant would have transported between the cities of Baltimore and Washington, to an extent equal to one-fifth of the gross amounts that the defendant would have received for the transportation of passengers between the two cities, had the Baltimore and Potomac road not been constructed.

4. That the Act of Assembly of 1832, chapter 175, as modified by the subsequent Acts offered in evidence, so far as they provide that the defendant shall pay to the Treasurer of the State, on the first Monday of January and July in each and every year, for the use of the State, one-fifth of the whole amount that shall be received for the transportation of passengers on the branch road mentioned in said Act during the six months last preceding, are unconstitutional, because in conflict with the Constitution of the United States.

5. That under the Acts referred to in the foregoing prayers the State is not entitled to recover one-fifth of the whole amount received for the transportation of passengers on that part of the branch road as lies outside the territorial limits of Maryland, and within the District of Columbia, because said Acts, so far as they require such payment of one-fifth of the receipts from the transportation of passengers on that part of said branch road which lies within the District, are in conflict with the Acts of Congress relating to said branch road, and with the Constitution of the United States.

6. That the Acts of Asssembly referred to in the foregoing prayers, so far as they require payment to the Treasurer of the State of one-fifth of the whole amount received from the transportation of passengers, are void as to so much of said branch road as lies within the District of Columbia, because in conflict with the Act of Congress of March 2nd, 1831, and the Acts subsequent thereto, in the same connection.

7. That the Acts of Assembly referred to in the foregoing prayers, require the defendant to pay only one-fifth of the whole amount that may be received for the transportation of passengers on the Washington Branch, and do not entitle the State to recover one-fifth of the money received for transportation on the main stem between the Relay House and Baltimore of such passengers as on the

Washington Branch, understanding by the Washington Branch the road between the Relay House and Washington.

The Court (MILLER, HAYDEN and HAMMOND, J.,) granted the prayer of the plaintiff, and rejected the prayers of the defendant, and also sustained the plaintiff's exceptions to evidence and excluded all of said evidence from its consideration. The defendant excepted.

The findings of the Court were in favor of the plaintiff and judgments were rendered accordingly. The defendant appealed.

The causes were argued before BARTOL, C. J., STEWART, GRASON and ALVEY, J.

*John K. Cowen* and *John H. B. Latrobe,* for the appellant.

To what portion of the railroad authorized by the Act of 1832, ch. 175, is the capitation tax applicable? The language of the Act speaking of the tax, is, "one-fifth of the whole amount which may be received for the transportation of passengers on *said* railroad by said company;" the words "said railroad," referring, as they necessarily do, to the road authorized by the Act, limit the tax to the distance between the Relay House and the District line. The main stem was already constructed and in use between Baltimore and the Relay House, when the Act of 1832, ch. 175, was passed; and the company needed no authority from the Legislature so far as that was concerned; and beyond the line of the District, the Legislature could give no rights, the road within the District being built under an Act of Congress, which, in its turn, was powerless to confer any rights or impose any obligations within the State of Maryland.

In corroboration of the view thus taken, with regard to the meaning of the words "said railroad," the Court's

attention is called to the Act of 1830, ch. 158, preamble and sections 1, 2, 3, 4, 5 and 6, also to the Act of 1831, chapter 330, preamble, sections 1, 3, 4, 6, 8 and 9, and the Act in *pari materia* with the Act of 1830 and 1831, of 1832, ch. 175, preamble, sections 1, 3, 4, 5, 9, 12, 13 and 14, also the Act of 1842, ch. 301.

Should it be held that the several Acts of the General Assembly of Maryland were intended to authorize the charge of one-fifth of the gross income, from the transportation of passengers within the District of Columbia, then the Acts in question to that extent are void, and in contravention of the Act of Congress, authorizing the construction within the District of Columbia, passed March 2d, 1831, authorizing the charge and collection of tolls within said District; and the Acts of the General Assembly aforesaid, requiring any portion of the tolls last aforesaid, to be collected for the use of the State of Maryland, are void.

It having been held in the case of *The Balto. and Ohio Railroad Company vs. The State of Maryland*, reported in 21 *Wallace*, 456, that the State having the power to construct the road in question, or any other public highway itself, it had the power to prescribe the terms on which said road might be constructed by others, and such power being necessarily limited to its own territory the attempt to extend it beyond it, is unconstitutional and void.

The Act of 1831, chapter 330, when accepted by the Baltimore and Ohio Railroad Company, was a contract binding the State not to incorporate another company to lay out and make a railroad between Baltimore and the District of Columbia, if the said Baltimore and Ohio Railroad Company should complete the Branch of the Baltimore and Ohio Railroad, authorized by the said Act, with at least one set of tracks, so as to be used and travelled from the commencement of it, to the line of the District of Columbia, within three years after the commencement

of the actual construction thereof, the time to begin the actual construction being extended by section 12, of the Act of 1832, ch. 175.

This contract was faithfully complied with by the Baltimore and Ohio Railroad Company, which completed the road in question and had it in use on the 20th of July, 1835, which was within the three years limited in the Act of 1831, sec. 8.

The Act incorporating the Baltimore and Potomac Company to construct their road as stated in the evidence, was the violation of this contract between the State of Maryland and the defendant, the injurious consequences of which are fully set forth in the evidence. And to permit the judgment in the present case to stand, would be to give to the State the benefit of its own wrong-doing in the violation of the contract with the company. *Binghampton Bridge Case,* 3 *Wallace,* 51; *Washington Turnpike Co. vs. State of Md.,* 3 *Wall.,* 210.

*S Teackle Wallis, Philip F. Thomas, I. Nevett Steele* and *Attorney General Gwinn,* for the appellee.

As to the contract which is alleged to have been violated by the Potomac charter. Was there any such contract? None is claimed to have been entered into in express terms. The contention of the appellant is, that such a contract is to be implied from or is involved in the 8th section of the Act of 1831, ch. 330.

The reservation of the right to incorporate another company, in case the appellant should fail to complete the road within the period named, is claimed to be equivalent to a surrender of the right in case the appellant should not fail in such completion. In other words, it is to be implied that the State contracted to give to the Baltimore and Ohio Railroad Company a monopoly, for all time, of the trade and travel between Baltimore and Washington, in consideration of the road's being finished by a day indicated.

Leaving out of question the constitutional power of the Legislature to create any such monopoly, under the 39th Article of the then existing Declaration of Rights, there are two principles of construction applicable to the case, which are established by too many decisions of the highest Courts to be open to discussion, viz.,

1st. That a surrender of the sovereign power of future legislation will never be implied, but must, on the contrary, not only be express, but distinct, unequivocal and beyond a reasonable doubt. *Cooley on Const. Limit.*, (*edit.* 1876,) 280 *to* 284, *and notes*; *Charles River vs. Warren Bridge*, 11 *Pet.*, 546, 547; *Howell vs. State*, 3 *Gill*, 14; *Gordon vs. Mayor, &c.*, 5 *Gill*, 237; *Mayor vs. State*, 15 *Md.*, 468; *Jefferson Bank vs. Skelly*, 1 *Black*, 446; *The Delaware Railroad Tax*, 18 *Wallace*, 225; *Balt. and Havre de Grace Co. vs. Union Railway*, 35 *Md.*, 230.

2nd. That all grants of corporate powers are to be strictly construed in favor of the State, and every doubt or ambiguity is to be solved against the corporation. *Pa. R. R. vs. Canal Comm'rs*, 21 *Pa.*, 22; *Miles vs. St. Clair Co.*, 8 *How.*, 581; *Cooley on Const. Lim.*, 394–397; *Richmond R. R. vs. Louisa R. R.*, 13 *How.*, 81; *Jefferson Bank vs. Skelly*, 1 *Black*, 446–7; *Rice vs. R. R. Co.*, 1 *Black*, 380; *Binghampton Bridge Case*, 3 *Wallace*, 75; *Charles River vs. Warren Bridge*, 11 *Pet.*, 544, 545; *Matter of Hamilton Avenue*, 14 *Barb.*, 405.

But this alleged contract is no part of the Act of 1832, ch. 175, by the 8th section of which the State's one-fifth is secured, and under which the Washington Branch was constructed. It is part of the Act of 1831, ch. 330, which devised a totally different mode of raising the funds for the construction of the road, and the complete failure of which created the necessity for the passage of the Act of 1832. The latter Act brought in the State as a subscriber, and relinquished the option which she had, under the previous laws, of becoming herself the owner of the

Branch Road when completed.    Without the Act of 1832 the whole project would have proved abortive, (see Judge ALVEY'S opinion, 34 *Md.*, 378,) and upon the terms of that Act the rights of the parties must depend.    Section 12 provides that the time limited by the 8th section of the Act of 1831 for the commencement and completion of the road shall be extended to certain times named, but omits altogether the language which is relied on as establishing the alleged contract here.    Section 15 then repeals in terms all parts of the previous legislation, "at all inconsistent with the provisions" of the Act of 1832.    This seems to dispose of the whole matter, for the Act of 1832 was accepted by the appellant, and the road was constructed, opened and operated under it only.    The appellant agreed to pay the one-fifth tax, for valuable consideration, or, as stated by Judge ALVEY, "for most material aid and benefits conferred," and "for the surrender of important and valuable rights held by the State" under the previous legislation, (34 *Md.*, 378.)    To say, then, that the State cannot recover its tax, because it has violated what (if ever a condition) was no condition of the statutory contract under which the tax was recovered, but only of a previous and entirely different statute, which absolutely failed of effect and was never acted under by either party, is certainly to press the doctrine of implication beyond any limits recognized in the books.

The appellant's fifth prayer asserts the proposition that the Acts under which the State sues, are in conflict with the Acts of Congress relating to the Branch Road, and also with the Constitution of the United States, in so far as they require one-fifth of the receipts from that part of the road which is in the District to be paid over.    The sixth prayer sets up a conflict with the Acts of Congress alone.

If the appellant had a road in Russia, there is no conceivable reason why it could not contract, for a valuable

consideration, and be bound to pay a share of its receipts therefrom to the State of Maryland, or any private individual. It is not the locality where the receipts are earned, but the ownership of them, which determines the right to dispose of them. The Supreme Court has said this substantially in reference to the very Acts in question. (21 *Wallace*, 468.) How an agreement of the appellant to pay its own money to the State for value received, can be unconstitutional, because the money is made and collected in the District of Columbia, must be respectfully left for the appellant's counsel to explain.

The appellant's seventh prayer insists that under the Acts of Assembly, the State is not entitled to one-fifth of the passenger fares received for travel between Baltimore and the Relay House. This is a simple question of interpretation and construction, and is not complicated with any supposed infraction of the Constitution of the United States. It is not the question whether the Main Stem, between Baltimore and the Relay House, is part of the Washington Branch road, in a certain literal sense, but whether the appellant did or did not contract to pay to the State, one-fifth of its gross receipts for passenger fares over the whole road from Baltimore to Washington, including that part which lies between Baltimore and the Relay. That the appellant's contract does cover the entire road between the two cities was conceded, in all the stages of the case already adjudicated, and was assumed in the opinions delivered in both Courts. It is the construction of the contract which both parties acted upon for thirty-three years, and in conformity with which the President of the company made his annual statement under oath, and the company made its semi-annual payments during all that time.

When the company finally resolved to force the State into the Courts, no objection to the propriety of this construction was made in the published communications

and addresses of Mr. Garrett, or the elaborate statement
of grievances in the report of the finance committee.	If
any doubt about it had ever existed before in the mind of
the company, it was certainly treated as unfounded, when
the company being pressed for its defences, did not set up
this among them.	And the language of the statutes, it is
respectfully submitted, is too clear to countenance any fair
doubt on the subject.

The first Act, (1830, ch. 158,) is entitled "an Act to
promote internal improvement by the construction of *a
railroad from Baltimore to the city of Washington.*"	The
Acts of 1831, ch. 330, and 1832, ch. 175, are both de-
scribed, in their titles, as supplements to "an Act to
promote, &c., by the construction of *a railroad from
Baltimore to the city of Washington.*"	Section 1 of Act
of 1831, ch. 330, authorizes subscriptions "to be applied
to the construction of the *railroad from Baltimore to
Washington* as authorized by this Act and the Act to
which this is a supplement."	Section 12 of the same
Act, relied on here as the basis of the State's alleged con-
tract set up in the first three prayers of appellant, reserves
the right, in case of the appellant's default, to charter
another company to construct a railroad "between the
city of Baltimore and the District of Columbia."	The
proposed road, under the Acts of 1830, ch. 158, sec. 1,
and 1831, ch. 330, sec. 8, was to commence "from such
point or place on that part of the Baltimore and Ohio
Railroad already constructed and in use, *not exceeding
eight miles from the city of Baltimore,* as the said company
may deem most convenient."	This provision was not
altered by the Act of 1832, so that the company, when
the contract was made under that Act, might have begun
its branch road at Baltimore, if it had seen fit, and the
contract was of course made subject to that contingency
and with a view to it.	When the Act of 1832 gave the
subscription of the State, and provided that all the stock

subscribed. for by the State, and by individuals and cor-
porations should be "a separate and distinct stock for-
ever," it provided in the same section, (sec. 2,) that the
money so subscribed should be "applied to the construc-
tion of *the said railroad from Baltimore to the city of
Washington.*" The same language is used in the 3rd,
4th, 5th and 6th sections of the Act of 1832. The 7th
section, giving to the appellant the right to charge two
dollars and fifty cents for its through fare, and in propor-
tion for shorter distances, which was equal to $6\frac{1}{4}$ cents
per mile, allows the through fare to be charged "for con-
veying each person *the whole distance between the cities of
Baltimore and Washington.*" The 8th section then re-
quires the appellant to pay to the State semi-annually one-
fifth of the whole amount which may be received for the
transportation of passengers *on said railroad* by said
company during the six months last pending." It re-
quires a yearly account to be sent to the Legislature show-
ing "the gross amount received by said company for the
transportation of passengers *on said road,* and the State's
proportion thereof." Then follow the proviso that "the
charge for conveying each person *the whole distance between
the cities of Baltimore and Washington,*" shall not be
reduced except by the Legislature, &c., and the further
proviso "that in no case shall *the amount received by the
State* from the Baltimore & Ohio Railroad Co. *for the con-
veyance of each person the whole distance between the two
cities be less than twenty-five cents,*" &c. The succeeding
sections are all in conformity with the plain language thus
quoted. If this does not bind the appellant to pay one-
fifth of its gross receipts from the road between Baltimore
and the Relay House, as part of the whole road between
the two cities, it would be curious to see in what words it
could be more plainly so provided. The appellant, down
to that time, was not entitled to charge more than three
cents per mile, per passenger, as provided by its original

charter, (1826, ch. 123, sec. 18,) on ány part of its main stem. The Act of 1832 allowed it to charge more than double that amount (sec. 7,) on the whole line, and for the whole distance between Baltimore and Washington, and that very increase, along the whole line, was one of the enormous benefits which the appellant derived from the contract, and in consideration of which among others, it engaged to pay to the State one-fifth of the receipts of the whole line. The subsequent legislation regulating the fare from time to time, is as plain in its language as the Act of 1832. *See Acts of* 1836, *ch.* 361, *sec.* 7, 1844, *ch.* 103, *secs.* 1 *and* 2, 1845, *ch.* 370, and 1852, *ch.* 328.

BARTOL, C. J., delivered the opinion of the Court.

These seven appeals involve the same questions of law, and have been argued together. They arise upon suits brought by the appellee to recover from the appellant, one-fifth of the whole amount of moneys received by the appellant for the transportation of passengers on the Washington Branch of the Baltimore and Ohio Railroad from January 1st 1870 to July 1st 1875. No questions are raised on the pleadings; the cases were heard and determined by the Circuit Court without the aid of a jury; and the questions of law were raised in the form of prayers, of which *one* offered by the plaintiff was granted, and *seven* offered by the defendant were rejected, to this ruling of the Circuit Court the defendant excepted, and also to the rejection of certain evidence offered on its behalf.

The right of the State to recover one-fifth of the passenger fares received by the Railroad Company on its Washington Branch, has been established by the decision of this Court (*State vs. B. & O. R. Co.*, 34 *Md.*, 344,) and by the Supreme Court in the same case, 21 *Wallace*, 456.

The constitutionality of the Acts of Assembly constituting the contract between the State and the Railroad Company was decided by both Courts.

The defence to the present suits is based on *three* propositions :

1st. That the charter of the appellant constituted a contract, by which the State bound itself not to charter another Railroad Company with power to make a railroad between the cities of Baltimore and Washington, and that the subsequent charter by the State of the Baltimore and Potomac Company, and the actual construction by the latter company of a railroad between those cities, was in violation of the contract made by the State with the appellant.

2nd. That the portion of the road on which *one-fifth* of the passenger fares was reserved, does not include the part of the road between Baltimore and the Relay House.

3rd. That it does not include that part of the road between the District line and Washington City.

*First.*—The supposed contract of the State, which it is alleged was violated by chartering the Baltimore and Potomac Company, is not found in express terms in the charter of the appellant, or in any of the supplements thereto ; but it is contended that it exists by implication arising from the 8*th section of the Act of* 1831, *ch.* 330.

This Act is supplementary to the Act of 1830, ch. 158, by which power had been given to the appellant to construct the Washington Branch road.   The 8*th section* contains these words :

" And if the said company shall not complete the said road with at least one set of tracks, so as to be used and travelled on from the commencement of it as authorized by this Act, to the District of Columbia, within three years after the commencement of the actual construction, the Legislature hereby reserve the right to incorporate another company, or to authorize any other persons in

their discretion to lay out and make a railroad on, and over any ground, and in any direction between the city of Baltimore and the District of Columbia, anything in this Act, or in the Act to which it is a supplement, to the contrary notwithstanding."

The argument of the appellant is that the effect of this section was to create a contract, prohibiting the State from authorizing the construction of any other railroad between Baltimore and Washington, provided the appellant should complete its road within the time prescribed by the Act. This is not expressed in the words of the section; they declare what is *reserved* by the State, and do not surrender any right or power belonging to the State. It would be contrary to well settled rules of construction to hold that the sovereign power of future Legislatures has been surrendered by implication.

The principle is well established that " Charters are to be construed most favorably to the State, and that in grants by the public nothing passes by implication." *Charles River Bridge vs. Warren Bridge*, 11 *Peters*, 544.

As said by the Supreme Court: "The principle is this; that all rights which are asserted against the State must be clearly defined and not raised by inference or presumption. *Binghampton Bridge*, 3 *Wal.*, 75."

And in *Jefferson Br. Bank vs. Skelly*, 1 *Black*, 446, the same Court said : "that neither the right of taxation, nor any other power of sovereignty, will be held, by this Court, to be surrendered, unless such surrender has been expressed in terms too plain to be mistaken."

This rule of construction of public grants and charters has been universally accepted as sound. Applying it to the present case, we do not find in the section above quoted, any such contract on the part of the State as is now maintained by the appellant. If however the section could be susceptible of the construction put on it by the appellant, it would afford no answer or defence to

these suits. The railroad was not constructed under, or in accordance with the provisions of the Act of 1831, ch. 330. The scheme thereby devised proved a failure, and it became necessary for the Legislature to pass the Act of 1832, ch. 175, which was accepted by the company and under which the Washington Branch was constructed. By this Act the State relinquished valuable rights which she had under the previous laws, and by *section* 8, the company contracted to pay the *one-fifth of the* passenger fare. *Sec.* 12 provides that the time limited by the 8th section of the Act of 1831, ch. 330, for the commencement and completion of the road shall be extended to the time therein named, and omits altogether the words contained in the 8th section of the Act of 1831, ch. 330, which are relied on by the appellant as creating a contract on the part of the State not to charter or authorize the construction of another railroad between Baltimore and Washington. *Sec.* 15 repeals all parts of previous legislation inconsistent with the provisions of the Act of 1832.

The contract on the part of the appellant to pay the *one-fifth,* was entered into by the Act of 1832, in consideration of valuable aid and benefits conferred by the State. It is a contract entirely independent of any condition contained in the Act of 1831, even if that Act could be construed as containing any condition, or any surrender or limitation of the power of the State to authorize the construction of a rival railroad; but in our judgment it cannot properly be construed to have any such operation or effect.

It follows that the *first, second* and *third* prayers of the appellant were properly refused. These prayers are obnoxious to objections on other grounds; but it is not necessary to advert to these more particularly, as we are of opinion that the supposed contract on the part of the State, upon which they are based, has no existence.

For the same reason before stated, we affirm the ruling of the Circuit Court, on the plaintiff's exceptions to evidence offered by the defendant and set out in the bill of exceptions.

2nd. The next ground of defence is that the contract to pay the State *one-fifth* has no reference to that part of the road between Baltimore and the Relay House, and in computing the sums to which the State is entitled, the passenger fares on that portion of the road must be left out of the computation. This proposition is asserted by the defendant's *seventh* prayer, and its decision depends upon the construction of the several Acts of Assembly relating to the subject. These are the Acts of 1830, *ch.* 158 ; 1831, *ch.* 330 ; 1832, *ch.* 175 ; 1836, *ch.* 261; 1844, *ch.* 103 ; 1845, *ch.* 370 *and* 1852, *ch.* 328. These have been carefully examined, and in our opinion, must be construed as making the contract with reference to the one-fifth payable to the State, apply to and embrace the whole road between Baltimore and Washington.

The argument on the part of the appellant is based on the fact that the Washington Branch as actually constructed, commenced at the Relay House nine miles from Baltimore, the road between that point and Baltimore having before been constructed and in actual operation, as a part of the main line of the Baltimore and Ohio Railroad Company, then extending west towards the Ohio. But while in one sense, the Washington Branch began at the Relay House, it is obvious from a careful reading of the several Acts of Assembly to which we have referred, that the contract of the appellant related to and embraced also that portion of the road between the Relay House and Baltimore, and the *one-fifth* secured to the State was one-fifth of the passenger fare upon the whole road between Baltimore and Washington.

This opinion is confirmed by the acts of the parties under the contract, showing that for a long series of years,

both the State and the Railroad Company have so construed it. Where the meaning of a contract is doubtful, the construction put on it by the parties, and their acts under it, may be resorted to, to determine its true construction. *Citizens' F. I. Co. vs. Doll*, 35 *Md.*, 107; *Chicago vs. Sheldon*, 9 *Wallace*, 54; *Railroad vs. Trimble*, 10 *Wallace*, 54.

But in our opinion the terms of the contract as expressed in the Acts of Assembly, are in this respect, free from doubt or ambiguity. It is evident that neither party contemplated, that in computing the *one-fifth* to be paid to the State, any portion of the road between Baltimore and Washington was to be excluded from the computation. For these reasons we think there was no error in refusing the appellant's *seventh* prayer.

3rd. With respect to the portion of the road within the District, it is very clear that it was comprehended in the terms of the contract, which as we have said, applied to the whole road between the two cities.

Although the road within the District was authorized by and constructed under the Acts of Congress, there is no doubt of the power of the appellant, to include it within the terms of the contract, nor is there any well founded constitutional objection to the contract on that account. It has been objected in the argument, that the Acts of Assembly are in conflict with the Acts of Congress, in requiring the Company to collect higher rates of fare in the District than the Acts of Congress allowed. If this were so, it would afford no defence to these suits; but from an examination of the Acts of Congress relating to the Railroad Company, we think no such conflict exists.

The *fifth* and *sixth* prayers were therefore properly rejected. The *fourth* prayer asserts that the contract securing to the State the *one-fifth* of passenger fares is unconstitutional, because in conflict with the Constitution of the United States. The particulars in which this alleged

unconstitutionality consists, is not stated.   We think the question raised by this prayer has been settled by the decision in 21 *Wallace*, 456, before referred to, the prayer was properly refused.

It follows from what has been said that the plaintiff's prayer was free from objection and there was no error in granting it.   Finding no error in the rulings of the Circuit Court the judgments in these several appeals will be affirmed.

*Judgments affirmed.*

(Decided 1st March, 1877 )