THE BABCOCK AND WILCOX COMPANY *vs.* EDWARD J. MOORE.

*Construction of Contract of Agency, as to its duration.*

The B. & W. Co., engaged in the manufacture of steam boilers in the City of New York, entered into an agreement with M. "in regard to selling boilers in Baltimore and vicinity," signed by both parties, and dated December 9th, 1881, and containing the following terms: " Mr. M. to open an office in Baltimore to represent the B. & W. Co., and work for their best interest in everything. On all sales made by him, he is to take charge of erecting, and collecting money and remit same to us; all contracts to be subject to the approval of home office. The B. & W. Co. to pay office rent and incidental expenses of same, necessary travelling expenses, and twenty-five dollars per week to Mr. M., charging the same to Baltimore office; five per cent. on all sales. by Mr. M. to be credited to Baltimore office, and any surplus credits *at end of year* to be paid to Mr. M." HELD:

That this contract is to be construed as continuing for a year, and the Company had no right to discharge M. during that time, merely because the sales effected in the Baltimore district, did not, in their judgment, warrant a continuance of his employment for that period.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, RITCHIE, and BRYAN, J.

*James P. Gorter*, and *Henry D. Harlan*, for the appellant.

*James W. Denny*, for the appellee.

MILLER, J., delivered the opinion of the Court.

The appellant company, an extensive manufacturer of steam-boilers in the City of New York, entered into a

written agreement with the appellee, Moore, "in regard to selling boilers in Baltimore and vicinity." This agreement, signed by both parties, bears date the 9th of December, 1881, and its terms are as follows:

"Mr. Moore to open an office in Baltimore to represent the Babcock and Wilcox Company, and work for their best interest in everything. On all sales made by him he is to take charge of erecting, and collecting money, and remit same to us; all contracts to be subject to the approval of home office. The B. & W. Co. to pay office rent, and incidental expenses of same, necessary travelling expenses, and twenty-five dollars per week to Mr. Moore, charging the same to Baltimore office; five per cent. on all sales by Mr. Moore, to be credited to Baltimore office, and any surplus credits *at end of year* to be paid to Mr. Moore."

Immediately after the execution of this agreement, Moore came to Baltimore, opened an office, and entered into the employ of the company, and performed his duties under the contract, until the 15th of October, 1882, when he was paid off and discharged by the company in pursuance of a notice previously given him on the 19th of September, 1882. In this notice they give as a reason for discharging him that the amount of sales made in the Baltimore district did not warrant their continuing him in that place. Having protested against being thus discharged, he brought this action against the company to recover for a breach of the contract. The suit was brought in January, 1883, and at the trial, the Court below, by its rulings upon the prayers offered on both sides, allowed the plaintiff to recover the twenty-five dollars per week, from the 15th of October to the 9th of December, 1882, less such amount as the jury may find he had otherwise earned during that period. By these rulings the Court construed the contract as continuing for a year, and that the company had no right to discharge the plaintiff during that time, merely because the sales effected in the

Baltimore district did not, in their judgment, warrant a continuance of his employment for that period; and the appellant's counsel concede that if by the true construction of the agreement it was to continue for a year, then the rulings are correct and the judgment must be affirmed.

That such is the true construction of this contract we entertain no doubt. The only other possible construction is that contended for by the appellant's counsel, viz., that under it, the relation of master and servant, or employer and employé, existed only at will, and was terminable at any time, or at most that it created only a weekly hiring, and therefore the notice given was sufficient to terminate it. In other words the contention is that the contract provides for a hiring merely at will or by the week. It seems to us, however, very plain that it constitutes neither of these hirings. It is a settled rule that in construing every contract, the subject-matter, or the object to be accomplished, and the surrounding circumstances must be considered, as well as its terms, in order to ascertain the intention of the parties. This contract contemplated the sale in Baltimore and its vicinity of steam-boilers made by this New York Company for the use of mills and other manufacturing establishments. The object of the company was to extend the sale of their boilers, and for this purpose they required an agent, and they accordingly contracted with Mr. Moore for his services as such agent. By the express terms of the contract Moore was not only to make the sales, but was to take charge of erecting the boilers when sold, and was to collect and remit the money therefor. Now it is not only probable, but almost certain, that it would require more than a week to erect or put up even one of such boilers, to say nothing of the time that would be required to effect the sale, and to collect and remit the money. Again, Moore was required to open an office in Baltimore to represent the company in this business, and to work for their best interests in everything, and

it would be very unreasonable to suppose that the parties intended that an office for such a purpose should be rented by the week or by the day. But more than all, the company, besides agreeing to pay the rent and expenses of this office, his necessary travelling expenses, and $25 per week to Moore, also agreed that five per cent. on all sales made by him should first be devoted to these payments, and then that *any surplus* of such percentage "*at end of year*" should also be paid to him; and this we regard as entirely conclusive of the question in dispute. What these commissions would amount to at the end of the year could not be ascertained before the year had expired, and the introduction of this clause into the contract shows conclusively that it was the intention of the parties that it should continue at least for a year, and that neither party should have the right to terminate it, except for good cause, before the expiration of a year from its date. As his compensation was thus made to depend, in part, upon the amount of sales he effected, he had a clear right to make the most he could out of this provision. It was a clause introduced for his benefit, and he was entitled to all the advantages it gave him. The construction contended for on the other side would not only deprive him of all benefit of this provision, but would place it in the power of the company to do him the greatest injustice. For instance, if he had within a short time after the contract was executed made sales to such an extent that the five per cent. thereon would have yielded a handsome surplus to increase his compensation, the company could by discharging him at once, or on a week's notice, and before the money from such sales had been collected, deprive him of all benefit thereof. We cannot sanction a construction which would permit such a result. Its terms, as well as reason and justice, require us to adopt, as we do, the construction which the Court below has placed upon this contract.

It becomes therefore wholly unnecessary to examine the authorities or to discuss the questions as to the difference

Warren Manufg. Co. of Balto. Co. *vs.* Hoffman.

between the English and American rule in regard to contracts of hiring generally or indefinitely, where no time is specified. It may be conceded that while in England such a general contract would be held to import a hiring by the year, it would in this country be construed as a hiring at will. But as we have shown, this is not a contract of hiring generally or indefinitely, and the case does not therefore require any reference to authorities illustrating the difference of construction between the English and American Courts where such contracts have been considered.

*Judgment affirmed.*

(Decided 15th May, 1884.)