FREDERICK A. TUBBS *vs.* CUMMINGS COMPANY.

Suffolk. November 10, 1908. — January 7, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Contract,* Construction, Performance and breach.

A manufacturer of boots and shoes at Worcester advertised for a salesman for certain western territory, and a salesman, who was a stranger to him and to whom the manufacturer was a stranger, answered the advertisement and furnished references. The salesman and the manufacturer thereupon on January 5 signed the following "memorandum of agreement": " T. [the salesman] to sell goods for C. [the manufacturer] exclusively and under his direction in the States of Indiana — Illinois — Michigan and Wisconsin and such other territory as may be mutually agreed upon. C. agrees to advance T. $75 to cover his first weeks salary and legitimate travelling expenses . . . and thereafter $50 each week for such time as T. shall be travelling in [C.'s] exclusive interest and under his direction. If T. shall complete a full year's service in the exclusive interest of C., and his accepted orders shall have been filled and

payment received by C. in excess of $48,000," T. was to receive "an additional sum equal to five per cent," of such excess. *Held*, that the contract was a hiring by the week at most and not by the year or for a year.

If, according to the provisions of a contract in writing for employment, payments are to be made weekly to the person employed, this circumstance, while it is of but little if any weight where other language in the contract expressly or impliedly describes the term of service to be longer than a week, nevertheless, in the absence of such other evidence, is of great weight in showing that the employment is by the week.

CONTRACT upon a written agreement of employment. Writ in the Superior Court for the county of Suffolk dated January 30, 1907.

At the trial before *Wait*, J., it appeared that, immediately after making the contract set forth in the opinion, the plaintiff went to Detroit, Michigan, where he arrived January 7, 1907. On January 17 the defendant wrote a letter to the plaintiff, criticising his work and containing the following: " We are extremely sorry that you could not have found time to do a little work outside of Detroit, between heats as it were, while waiting for this seemingly unmaterialized business. It is enjoyable we grant you, but most too expensive to put in two weeks in one place for such a small amount of business as you are evidently to get out of it. Don't hibernate. Get away from Detroit and good living for a while, get out, get to work and hustle hard for business."

On January 18 another letter of criticism was sent to the plaintiff by the defendant, and on January 19 the defendant telegraphed to the plaintiff: " Report at factory with samples at once."

On January 19 the plaintiff wrote, in reply to the defendant's communication of January 17 and the telegram of January 19, a letter which was received by the defendant on January 21, containing the following: " I have done my duty in your behalf and worked early and late for your interest, and went according to my instructions, and see no reason to be treated the way I have been, but it is no more than I expected from such people as you that don't know the first thing about selling shoes let alone treating your men with respect. You have not kept your word with me in anything you agreed to do and feel more than glad that this has turned out as it has. God knows what you would have done if I got any further west. · I am here at your expense and will be until you send me money to pay my bill and expense of getting home." Subsequent letters, written

to the defendant by the plaintiff while he was waiting in Detroit, contained the following : " Send me my check. I want to come home, and very glad that did not get any further." " You are obliged to get me home so every moment's delay is adding to the expense. The business that I have, I shall turn down."

The defendant sent a representative to Detroit who returned to Massachusetts with the plaintiff on January 21. On January 24 the defendant wrote to the plaintiff formally discharging him from its employ. Other facts are stated in the opinion.

At the close of the evidence, the defendant requested that a verdict be ordered for the defendant. The jury found for the plaintiff ; and the defendant alleged exceptions.

*J. W. Spaulding*, for the defendant.

*H. H. Bond*, for the plaintiff.

HAMMOND, J. This is an action of contract to recover salary for one year (less such sums as the plaintiff earned in other employment after his discharge), upon the following contract :

" Worcester, Mass. Jan. 5, 1907.

" Memorandum of agreement between Mr. Frederick A. Tubbs and The Cummings Co., Mr. Tubbs to sell goods for The Cummings Co., exclusively and under their direction in the States of Indiana— Illinois — Michigan and Wisconsin and such other territory as may be mutually agreed upon. The Cummings Co. agree to advance Mr. Tubbs the sum of $75 to cover his first weeks salary and legitimate travelling expenses beginning Jan. 5th, 1907, and thereafter the sum of $50 each week for such time as Mr. Tubbs shall be travelling in their exclusive interest and under their direction.

" If Mr. Tubbs shall complete a full year's service in the exclusive interest of The Cummings Co., and his accepted orders shall have been filled and payment received by The Cummings Co., in excess of ($48,000) forty-eight thousand dollars in that year, Mr. Tubbs shall be entitled to receive from The Cummings Co., an additional sum equal to five per cent on whatever amount such orders shall exceed the sum of forty-eight thousand dollars.

" Frederick A. Tubbs,

The Cummings Co.,

" Albion S. Clement, Mgr."

The plaintiff began work under the contract on January 5, 1907, and was discharged January 24, 1907.

At the trial the presiding judge ruled that " the contract was a contract for one year." To this ruling the defendant excepted. The exception must be sustained. Upon its face the contract was a hiring by the week at the most, and not by the year or for a year. The payments were to be made weekly; and while this circumstance is of but little if any weight where there is other language in the contract expressly or impliedly describing the term of service to be longer than a week, yet in the absence of such other language it is of great weight. In the contract before us there is no language expressly naming one year as the term of employment. Nor is the language such as to imply that such is the understanding of the parties. The reference to a " full year's service " is not made as if such service was one of the settled and absolute features of the contract, but merely as if it were a possible contingency. By the first paragraph of the contract the plaintiff's weekly salary was fixed for the time he should work. By the second it was provided that in certain contingencies he should receive an additional compensation. Those contingencies were two, namely: First, that he shall have completed " a full year's service "; second, that his accepted orders " shall have been filled and payment received by . . . [the defendant] . . . in excess of $48,000." One of these events was as contingent as the other. There is no fair implication that either was to be regarded as absolute. Such is the fair construction of the contract upon its face. The case differs materially from cases like *Norton* v. *Cowell*, 65 Md. 359, *Koehler* v. *Buhl*, 94 Mich. 496, *Kelly* v. *Carthage Wheel Co.* 62 Ohio St. 598, *Heminway* v. *Porter*, 94 Ill. App. 609, *Babcock & Wilcox Co.* v. *Moore*, 62 Md. 161, upon which the plaintiff relies. It more nearly resembles cases like *Harper* v. *Hassard*, 113 Mass. 187, although it is much stronger for the defendant than that case was. For a discussion of the law on this subject see *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1.

And this construction is confirmed by the circumstances under which the contract was made. The defendant was a manufacturer of boots and shoes at Worcester in this State. Before

January 5, 1907, it advertised for a salesman for certain western territory. The plaintiff saw the advertisement and applied for the position, furnishing references. After inquiries the defendant entered into the contract. The parties were strangers to each other. The plaintiff could not know that the defendant would be a reasonable or satisfactory employer, nor could the defendant know that the plaintiff would be an agreeable or successful salesman. Each might want to know more of the other before making a contract which would be binding for a long time. These circumstances point not so much to a contract for a year as to a contract in the way of a trial, on the part of the defendant, of the capacity of the plaintiff, and, on the part of the plaintiff, of the desirability of continuing in the employ of the defendant.

Moreover, the acts of the parties tend strongly to show that this view of the nature of the contract was plainly in accordance with their understanding. Within three weeks from the commencement of the service the defendant discharged the plaintiff, and the latter, while evidently feeling much aggrieved at the act as very unjust towards him, and while protesting that he had worked faithfully for the interests of the defendant, did not in any way claim at the time that the contract was for a year. On the contrary he seemed to accept his discharge as an act within the power of the defendant, and the chief wish he expressed was to get home.

It becomes unnecessary to consider the other exceptions.

*Exceptions sustained.*