DONALD FENTON vs. THE FEDERAL STREET BUILDING
TRUST.

SAME vs. BOSTON SAFE DEPOSIT AND TRUST COMPANY &
another, executors.

Suffolk.   November 7, 1941. — January 26, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Broker*, Commission.   *Contract*, Construction, Modification, Validity.
   *Evidence*, Presumptions and burden of proof.

Evidence warranted a finding that, after one, employed by the manager
   of a building to secure tenants therein for a weekly wage plus a certain
   commission for each tenant obtained, had carried on preliminary nego-
   tiations with a prospective tenant and the manager had told the
   employee that he wished to conduct such negotiations thereafter him-
   self, the manager and the employee modified the contract of employ-
   ment so that the employee was not to do anything further respect-
   ing the prospective tenant but was to receive the same commission
   if the manager should succeed in consummating the transaction.
Testimony by the plaintiff that an oral contract involved in an action
   had not been modified did not preclude the jury from finding, on his
   entire testimony and other evidence, that it had been modified in a
   manner favorable to him.
Statements by the manager of a building to one employed by him to
   secure tenants therein for a certain commission, that the employee
   should leave to him the matter of a prospective tenant with whom
   the employee had conducted preliminary negotiations: "I will see
   you are taken care of if anything is done, but I want to do it myself,"
   constituted a promise which was not too indefinite to be enforced and
   might be found to mean that if a transaction with the prospective
   tenant were consummated by the manager, the employee should re-
   ceive the same commission as if he himself had completely negotiated
   the transaction.

CONTRACT.   Writ dated May 11, 1937; also an action of
CONTRACT OR TORT.   Writ dated February 16, 1940.

The actions were tried together in the Superior Court
before *Hanify*, J.

The third count of the declaration in the second action
was as follows: "And the plaintiff says that in the year
1936, he was employed by the defendants' testator, Willard

E. McGregor, to find a party who would have business relations with said McGregor, or the trustees of . . . [the Federal Street Building Trust], in connection with the building at 24 Federal Street, Boston, belonging to the Federal Street Building Trust, and was told by the said Willard E. McGregor that he, the plaintiff, would be paid a commission by the said McGregor upon any business transaction into which the said McGregor or any of the trustees of said trust might enter in connection with the said building with parties suggested by the plaintiff to the said McGregor or the trustees of said trust. And the plaintiff further says that as a result of his efforts and suggestions, the said McGregor and/or the trustees of said trust entered into a certain business transaction in connection with the said building, but that the said McGregor and the defendants as executors under his will, have severally refused to pay the plaintiff the commission due him, all to his great damage."

*R. B. Owen,* for the plaintiff.

*M. Jenckes,* (*C. C. Cabot* with him,) for the defendants.

RONAN, J. The first action is in contract to recover a commission from a trust, organized under a written declaration of trust and having transferable certificates representing the beneficial interest therein, for securing a tenant in the trust property and a purchaser of one half of the trust certificates; and the second action, so far as now material, is in contract to recover a commission, on account of the said lease and said purchase, from the executors under the will of one McGregor, hereinafter called the testator. The plaintiff excepted to the direction of a verdict for each defendant. The parties have stipulated that, if "there was sufficient evidence to warrant a verdict for the plaintiff on any of the counts in either of the declarations," then a judgment was to be entered for the plaintiff in each case for a designated amount.

The trust was the owner in 1935 of a large commercial building in Boston which was not fully occupied by tenants. One Anderson and the testator were the trustees. Anderson lived in New York and seems not to have been as active

as was the testator in the management of the trust. The testator had an office in the trust building and "was the managing trustee of the trust." In September, 1935, he employed the plaintiff to go around and secure tenants as the testator was too busy to devote all his time to finding tenants. The plaintiff was to be paid $30 a week and in addition thereto, in case he secured leases from any new tenants, he was to be paid one half the regular commission for obtaining such leases. The plaintiff accepted this employment and, except during December, 1935, was engaged in the performance of his duties, for which he was paid by the personal checks of the testator until August 1, 1936, when the testator declined to employ him any longer upon a salary basis but suggested that he continue as a broker upon a commission basis, which suggestion the plaintiff apparently did not accept. In addition to his salary he was paid one half the regular commission by the trust in November, 1935, for securing a lease from a new tenant. In the spring of 1936, the plaintiff sent one Scudder to Paine Webber and Company, hereinafter called the firm, to ascertain if it would be willing to take space in the trust property. Scudder interviewed two members of this firm and ascertained that its lease was to expire in about a year and that it was negotiating for a new lease. The firm had been located in its quarters for thirty years on one floor and considered its location for such a long period to be a business asset, and that its space on a single floor was preferable to occupying the three top floors in the trust property, which it would require for adequate floor space. During the interview these members manifested an interest in the purchase of the trust property, and Scudder left with the purpose of securing and supplying them with the information that a prospective buyer usually desires in order to enable him to determine the value of the property. Scudder reported this interview to the plaintiff who, within a day or two, informed the testator. He told the testator he believed that Scudder and himself could show the firm the real possibilities of the trust property. The testator told him to go ahead, and gave him figures showing the gross expenses and the gross

income if all the property were leased. As the plaintiff started to leave, the testator called him back and said that he did not know whether there was anything in the proposition or not but that he, the testator, could do a better job than anyone else as he knew the members of the firm, to leave the matter to him, and that "I will see you are taken care of if anything is done, but I want to do it myself." The plaintiff relied upon what the testator had said and did nothing further in the matter. The firm on September 1, 1936, leased the three top floors of the trust building and purchased one half of the trust shares. The testator refused to pay any commission to the plaintiff.

The jury could find upon the evidence that the plaintiff accepted the offer of the testator of September, 1935, and that upon the performance of his services in seeking and securing tenants for the trust property he was to be paid compensation in the amount and at the times promised by the testator. The plaintiff did not agree to work for any definite time, nor did the testator agree to employ him for any stated period. Either could have terminated the employment when he desired to do so or at least at the end of each week while the employment continued. *Harper* v. *Hassard*, 113 Mass. 187. *Tubbs* v. *Cummings Co.* 200 Mass. 555. *Campion* v. *Boston & Maine Railroad*, 269 Mass. 579. It might have been found that the testator, however, did not terminate the plaintiff's services when he learned of the efforts of the plaintiff and Scudder with the firm, but offered to change the terms of the plaintiff's employment by relieving him from doing anything further to secure a lease from the firm and promising to pay him if he continued in the service of the testator compensation at the rate of $30 a week and one half of the commissions that he earned plus one half of the commission if the testator succeeded in consummating a transaction with the firm. There was evidence that the plaintiff accepted the change in his duties suggested by the testator and that, relying upon the promise of the testator, he continued in his employment until it ceased by mutual consent in August, 1936. The promise of the testator to pay the plaintiff compensation

was a mere revocable offer which ripened into a complete contract when the plaintiff had performed the services for which the compensation was promised. The plaintiff might, therefore, have been found entitled to receive not only the weekly payments, all of which were paid, but also one half of the commission which became due and payable upon the successful completion of the negotiations between the testator and the firm. *Train* v. *Gold,* 5 Pick. 380. *Wellington* v. *Apthorp,* 145 Mass. 69. *First National Bank* v. *Watkins,* 154 Mass. 385. *Brand* v. *Sterling Motor Car Co.* 243 Mass. 303. *Des Rivieres* v. *Sullivan,* 247 Mass. 443. *Moody* v. *Weymouth,* 276 Mass. 282. *Globe Paper Co. Inc.* v. *Russell Box Co.* 291 Mass. 1.

Although the plaintiff testified on cross-examination that at no time was his contract with the testator modified, yet he had fully testified to the arrangement that was made in reference to the firm, and the jury could consider his entire testimony and determine for themselves the exact nature of the contract existing between the parties. They could find upon the evidence that the payment of a commission was just as much a part of the contract as was the payment of the weekly wages, and could properly refuse to deal with the matter of commission as something separate and independent of the contract of employment. *Zampatella* v. *Thomson-Crooker Shoe Co.* 249 Mass. 37. *Patton* v. *Babson's Statistical Organization, Inc.* 259 Mass. 424. The jury were not obliged to accept the plaintiff's interpretation of the contract nor were they precluded from finding that the terms of employment were changed in so far as they related to the dealings with the firm. *Smith* v. *Plant,* 216 Mass. 91, 98, 99. *Campion* v. *Boston & Maine Railroad,* 269 Mass. 579, 582.

The promise by the testator to see that the plaintiff, if he would withdraw from further negotiations with the firm, would be taken care of was not too vague, uncertain or indefinite to render it incapable of being enforced.. The jury might find that, in the circumstances, the plaintiff was to be paid the same compensation as if he himself had successfully negotiated the lease. In other words, the agreement

could be reasonably understood to mean that the plaintiff was to be made whole. This could not be accomplished unless the plaintiff were put in the same position as he would have been in if his services had not been interrupted by the testator. *Silver* v. *Graves,* 210 Mass. 26. *Brennan* v. *Employers Liability Assurance Corp. Ltd.* 213 Mass. 365. *Dixon* v. *Lamson,* 242 Mass. 129. *Greene* v. *Boston Safe Deposit & Trust Co.* 255 Mass. 519. *Ferris* v. *Boston & Maine Railroad,* 291 Mass. 529.

The plaintiff was entitled to go to the jury on the third count of his declaration in the action against the executors, *Larson* v. *Sylvester,* 282 Mass. 352; *Dolben* v. *Gleason,* 292 Mass. 511; *Anglo-American Direct Tea Trading Co.* v. *Seward,* 294 Mass. 349, and, in view of the stipulation fixing the amount of the judgments if the plaintiff was entitled to recover any amount, it is unnecessary to decide whether the plaintiff could recover a commission on the sale of the trust shares or whether there was error in directing verdicts on the remaining counts. Nor need we determine whether the trust was also liable, as the stipulation provides that if there was error in directing a verdict in the case against the executors then judgments were to be entered in favor of the plaintiff in both actions for the amounts designated. Accordingly, judgments for the plaintiff must be entered in said amounts.

*So ordered.*