Frederick **LOWENSTEIN**

v.

**PRESIDENT AND FELLOWS OF HARVARD COLLEGE.**

Civ. A. No. 68-1103-F.

United States District Court,
D. Massachusetts.

Dec. 15, 1970.

---

Arthur Finn, Waltham, Mass., for plaintiff.

Thomas G. Dignan, Ropes & Gray, Boston, Mass., for defendant.

## OPINION

FRANCIS J. W. ·FORD, District Judge.

Plaintiff brings this action to recover damages for an allegedly wrongful discharge from his employment by defendants.

In 1966 Harvard was engaged in a project funded by the National Aeronautics and Space Administration (NASA) for the development of a satellite to be placed into orbit by NASA to observe emissions from the sun. A team working for Harvard was engaged in the development and construction of instruments to be carried by the satellite. This group was known as the Space Radio Astronomy Laboratory, and was directed by Dr. Huguenin, an Assistant Professor at Harvard. Robert Chambers had recently been promoted to the position of engineering manager of the project.

In the summer of 1966, Harvard advertised for men to replace certain employees who were resigning. Plaintiff responded to this advertisement and was interviewed by Chambers and later by Dr. Huguenin. Most of the discussion in these interviews dealt with the technical discussion of the duties involved in the job. There was, however, some discussion as to pay and fringe benefits, but nothing specific was said as to how long the employment would last. However, Lowenstein was told that, like all Harvard employees, he would be on probation for three months.

Except for Dr. Huguenin, who held a "corporation appointment" carrying tenure, all employees on the project were hired for an indefinite term, terminable at will by either Harvard or the employee.

On September 7, 1966, a few days after the interviews, Chambers wrote to plaintiff a letter which said, in part, as relevant here, "On behalf of Prof. Huguenin and the Harvard College Observatory, it is a real pleasure to offer you a position of Staff Physicist with the Space Radio Astronomy Laboratory. We propose a starting salary of $14,000 per year." Lowenstein later talked to Chambers in an unsuccessful effort to get a larger salary. A day or two later, he telephoned to accept the position as offered in Chambers' letter; and shortly thereafter, at sometime during September, he began work.

Lowenstein's first assignment was to take over work on two spectrometers. Theory and design work had been completed, and Lowenstein's job was "debugging", that is, removing mechanical flaws from the spectrometers which had been fabricated. Among the component parts of these spectrometers were circuit boards which are worth about one thousand dollars each when various components and circuits have been fastened to them. The basic board itself cost about two hundred dollars, and it took the manufacturer about six weeks to make and deliver a set of boards. To meet NASA requirements, boards damaged by poor soldering or other misuse could not be repaired and used, but new boards had to be obtained to replace them. The project rules required that engineers such as Lowenstein were not to perform soldering or other manual work on the boards, but were to call upon available NASA-trained technicians to do this work. Lowenstein attempted to do such manual work himself and, because of lack of skill, destroyed several boards. Huguenin then specifically reminded him of the rule that this work must be performed by a technician. A week later, Lowenstein again did manual work on the

boards and burned out an entire set of boards.

Lowenstein was then assigned to work on developing an impedance meter. He accomplished nothing on this project, which was later taken over by another engineer.

Lowenstein was then given the job of making measurements to calibrate an antenna. He objected to doing this work with ground-based equipment. Because flying was his hobby, he insisted on using methods of measurement which would involve the use of a plane. Consequently, he was taken off this phase of the project.

Another task to which he was assigned was that of calibrating a noise generator. He was unable to perform this task satisfactorily. Huguenin rejected the results obtained on the basis that he could tell at a glance that they contravened basic scientific principles.

As a result of Lowenstein's work, the progress of the project was delayed for about two months.

Finally, Huguenin and Chambers decided to terminate Lowenstein's employment, and Chambers discharged Lowenstein on November 3, 1966. Lowenstein did not work after that date, but he was paid through November 15, 1966.

Plaintiff claims that his discharge was a violation of his contract with defendants. All parties are agreed in calling the term of Lowenstein's appointment indefinite, but they differ as to the meaning of an "indefinite" appointment. Defendants' view is that an indefinite appointment, in the light of the ordinary meaning of the words, is one which had no exact period of time for which it was to run, and so could be terminated at will by either party. Plaintiff argues that an indefinite appointment was one which was to run for some minimum period, either a year (because his salary was fixed as fourteen thousand dollars a year) or for the duration of the project for which he was hired, and thereafter was to continue for some further indeterminate period.

Plaintiff relies on certain cases in which an employment contract contained a provision for payment of a stated salary per year and had no express provision as to how long the employment was to continue. Those cases go no further than to hold that in such a situation the plaintiff may show that the actual intent of the parties was that the employment should continue for at least a year, and even thereafter from year to year until terminated. Such an intent of the parties may be shown by evidence as to the nature of the employment, usages of the business, prior negotiations, the situation of the parties and other relevant circumstances. Mahoney v. Hildreth & Rogers Company, 332 Mass. 496, 125 N.E.2d 788; Maynard v. Royal Worcester Corset Company, 200 Mass. 1, 85 N.E. 877.

In this case there is no evidence to justify a finding that the parties intended that Lowenstein's employment was to last for any definite minimum period, or that the words "salary of $14,000 per year" were intended to do more than fix that rate at which Lowenstein was to be paid for such length of time as his employment continued. Huguenin and Chambers never intended to agree to any minimum period of employment. They said nothing that could reasonably be given such an interpretation. Any fixed period of employment would be contrary to the regular policy of employment terminable at will by either party which governed the employment of all other employees without corporation appointments and inconsistent with their statement to plaintiff that he would be on probation for three months. Plaintiff's interpretation of the meaning of indefinite employment is one which seems to have arisen solely in his own mind, and only after he had been discharged, since the first statement of his claim of a right to be employed for one year or any other minimum fixed period came only in 1968, two years after his discharge. The Court finds that plaintiff's contract of employment was not one for any definite time or stated period.

Either party was free to terminate it at any time. Fenton v. Federal Street Building Trust, 310 Mass. 609, 612, 39 N.E.2d 414.

Even if the contract had been for any definite period, it could still have been terminated for justifiable cause. Mahoney v. Hildreth & Rogers Company, *supra*, 332 Mass. at page 499, 125 N.E.2d 788. The evidence shows that in the approximately two-month period during which plaintiff was employed, he had proved uncooperative, had failed to carry out his work in the manner directed and in accordance with the rules of the project, and that he had failed to accomplish any substantial amount of useful work. The net result of his work had been to impede rather than to further the progress of work on the project. Defendants clearly had justifiable cause to discharge him.

Judgment will be entered for defendants dismissing the complaint.