Welch, J.
The defendant Frelonic Corporation moves for summary judgment in this action. Because the facts, taken in the light most favorable to the plaintiff, fail to establish that the plaintiff was anything more than an “at-will” employee, summary judgment must be granted as to Count I (breach of contract) and Count II (breach of contract and promissory estoppel). Genuine issues of material fact exist as to the remaining counts (Counts III through V) which allege negligent misrepresentation, fraudulent inducement, and intentional misrepresentation. Thus, the motion is granted in part and denied in part.[1]
For the purposes of this motion, the facts are viewed in the light most favorable to the plaintiff with all reasonable inferences being drawn in favor of the plaintiff.
The plaintiff, John M. Webber, was lured away from his employment at Leader Sports Products in New York by a job offer from defendant Frelonic Corporation, a Massachusetts-based company. That job offer came in the form of a memorandum dated August 1, 1991 from the president of Frelonic, John M. dayman. It offered plaintiff Webber a base salary of “$60,000/year.” In addition, the offer included a monthly automobile allowance, a sales bonus provision computed on a yearly basis, the payment of reasonable moving expenses from Webber’s current address to a new local address, and a vacation provision: “Two weeks paid vacation 1st year. Three weeks after five years.” Plaintiff Webber accepted this offer orally, not in writing. No further written contract regarding his employment was ever entered into.
Mr. Webber interpreted this employment offer as employment for a minimum period of one year. His understanding of the offer came from a conversation he had with Frelonic’s president, John dayman, during the time that Webber was considering leaving Leader to join Frelonic. During the course of that conversation, dayman told Webber that he treated his employees well and that he did “everything on a handshake.” dayman then stated: “if [you] last here for more than the year, that. . . [Webber] would probably end up staying here for life.” In recounting this conversation at his deposition, Webber further explained: *195 “So when I took on this [employment], it was that we had a year to pull this together. That was my understanding that was conferred through the conversations that we [Webber and dayman] had and that I would be there for a year to pull this together.”[2]
As a result of his acceptance of the job offer, Webber relocated and began work at Frelonic in early September 1991. Webber’s employment did not last a year at Frelonic. Instead, he was terminated from his employment at Frelonic by Frelonic president dayman around February 13, 1992.
Based upon these facts, the plaintiff asserts that he had a one-year employment contract with defendant Frelonic. In addition, the plaintiff claims that various statements from Frelonic constituted negligent or intentional misrepresentations, fraud and deceit.
DISCUSSION
The general rule regarding employment contracts in Massachusetts, be they express or implied, is that “where an employment contract. . . contains no definite period of employment, it establishes employment at-will . . . terminable by either the employee or the employer without notice for almost any reason or for no reason at all.” Jackson v. Action For Boston Community Development 403 Mass. 8, 9 (1988). An agreement that establishes an annual rate of pay does not create a contract for a definite term of employment. Frederick v. Conagra, 713 F.Supp. 41, 46 (D.Mass. 1989) (and cases cited therein). Whether an employment contract contains a definite period of employment “depends upon all the attendant circumstances surrounding the agreement, as well as its terms, when the latter are not specific and clear.” Kravetz v. Merchants Distributors, Inc., 387 Mass. 457 (1982).
The issue in this case, at least as to whether a one-year employment contract existed amounts to two questions. First, whether the general rule of “at-will” employment applies to a contract that does not list a specific term of employment. Second, whether “special circumstances” exist from the surrounding conditions of Webber’s employment that create a genuine issue of fact as to whether a definite term of employment was implied when the plaintiff accepted Frelonic’s offer of employment. See Booth v. McDonnell Douglas Truck Serv., 585 A.2d 24, 27 (Pa. Super. 1991). The only special conditions specified by the plaintiff came out of president dayman’s statement regarding lasting “the year” and other statements by dayman concerning Frelonic’s future and its generous treatment of employees.
The written offer, which was orally accepted by Webber, does not by itself provide a sufficient basis for finding an employment contract for the specific duration of one year. Even looking in the light most favorable to the plaintiff, that document simply sets an annual salaiy and a bonus and vacation schedule computed on an annual basis. Webber must produce more evidence, such that a jury would be warranted in finding that his negotiations provided him with a reasonable, objective basis for believing that he was hired for a minimum period of one year. See Frederick v. Conagra, 713, F.Supp. at 46. Webber points to various general statements made by the president of Frelonic regarding the fact that the company would grow significantly in sales in the future. Indeed, president dayman remarked that Frelonic “was like a sleeping giant waiting to be born.” These types of general optimistic business projections are simply words of hope that do not provide any basis for a reasonable businessman to think he is being hired for any particular term of time. In addition, Webber points to statements by dayman regarding his status in the community. For example, dayman stated that, “his father was ‘like’ the mayor of Marblehead” and that he treated his “employees very well.” Again, this Court finds that these statements are simply too general, as a matter of law, upon which to base an employment contract for a definite duration.
More to the point is the statement by dayman that: “if [you] last more than the year . . . the chances are you will be with this company for life.”[3] The statement that, “If you last for more than the year, the chances are you will be with this company for life” does not, in the context of the conversation, provide for a definite term of employment of one year. Unless we have gone beyond the looking glass, the words mean what they say in the context of this setting. The plaintiff was offered an opportunity to prove himself. After all, the focus of the statement relates to Mr. Webber’s ability to “last” for the specified period. In the words of the plaintiff, “We had a year to pull this together.” If the plaintiff was successful in establishing his reputation within the company during that initial year, he would likely be an employee for life. The only reasonable interpretation is that the plaintiff was an at-will employee during the one-year trial period. See Tennaro v. Ryder System, Inc., 832 F.Supp. 494, 501 (D.Mass. 1993) (practice of annual performance reviews at end of year and employer’s prediction that employee had a promising future with company did not, as matter of law, create a contract for a period of one year).
Indeed, plaintiffs argument proves too much. At oral argument, the plaintiff conceded that if his interpretation of dayman’s statement was true (namely, that “the year” meant a one-year contract to be followed up with “staying here for life”) then the plaintiff was legally entitled to rely upon dayman’s statement as producing a lifelong employment contract whereby he could only be terminated for specific cause. Such an interpretation simply does not comport with the law or the facts taken in the light most favorable to the plaintiff.
The best evidence that the plaintiff has been able to amass does not indicate that any term of employment was ever implicitly agreed upon by the parties. *196 There is no additional employment provision or document that is linked to any specific period of time. Contrast Frederick v. Conagra, 713 F.Supp. at 46 (two-year loan to employee to be forgiven if employee stayed with employer for two years); Hobson v. McLean Hosp. Corp., 402 Mass. 413, 415 (1988) (personnel manual provided with employment may provide basis for express or implied contract); Decker v. Worcester Junior College, 369 Mass. 960, 961 (1975) (formal procedure reappointment communicated). Therefore, the defendant is entitled to summary judgment as to the contract claim.
Summary judgment will also enter as to Count II of the plaintiffs complaint. That count simply reiterates the allegations of Count I (relating to a breach of contract) and makes the one additional allegation that the plaintiff reasonably relied upon Frelonic’s representations. As set forth above, there does not appear to be a genuine issue of material fact as to the particular representations in this case. See Lowenstein v.. President and Fellows of Harvard College, 319 F.Supp. 1096, 1098 (D.Mass. 1970). As drafted, Count II mirrors Count I and rises or falls on the same issues. Therefore, summary judgment is appropriate as to Count II.
Counts III through IV, however, raise different issues relating to misrepresentation and fraud. These counts do appear to raise genuine issues of material fact. Whether any of Frelonic’s representations were designed to mislead the plaintiff and fraudulently induce him into leaving secure employment for a job at Frelonic is a matter for the jury to decide. Here there are factual issues for a jury to decide regarding whether the representations were true or false when made (relating to subjects such as future growth of the company, the long-term security of the job, etc.). Likewise, factual issues exist as to whether the offer to provide an assistant to Webber was sincere or whether there was any realistic opportunity for Webber to last for any reasonable length of time at Frelonic. An action for negligent or fraudulent misrepresentation stands separately from any breach of contract claim. Even if Webber was an “at-will” employee, he is still able to maintain an action for fraud or misrepresentation. See Frederick v. Conagra, 713 F.Supp. 41, 47 (D.Mass. 1989); Tennaro v. Rider System, Inc., 832 F.Supp. 494, 501 (D.Mass. 1993).Therefore, summary judgment is denied as to Counts III, IV and V.

during oral argument on this motion, the plaintiff displayed a refreshing degree of forthrightness and professionalism in conceding that he had not made out a claim as to Count VI of the complaint alleging a covenant of good faith and fair dealing. Summary judgment, therefore, is entered as to Count VI.

At oral argument, Webber also claimed (citing no particular piece of evidence) that Frelonic assured him that they would be hiring an assistant for him to do his job. No such assistant was ever hired.

The plaintiff, in his deposition, recounted two different versions of this conversation with dayman. In one he states that president dayman stated, “If you last for more than a year”; in the other version he changes the modifier and claims that dayman stated, “If you last for more than the year.” This court, looking at the evidence in the light most favorable to the plaintiff, will take the latter interpretation.