## MATTINGLY LUMBER COMPANY ET AL. *v.* EQUITABLE BUILDING & SAVINGS ASSOCIATION.

[No. 25, January Term, 1939.]

*Decided April 14th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*James Olon Scrimger* and *Daniel S. Sullivan, Jr.,* for the appellants.

*Mason P. Morfit,* for the appellee.

SHEHAN, J., delivered the opinion of the Court.

The appellants, the Mattingly Lumber Company and the Goddard Millwork and Lumber Company, are both bodies corporate, and assignees of J. Hurst Purnell of the obligation upon which this suit was brought. These companies sued the Equitable Building and Savings Association of Baltimore City to recover the sum of $2000, hypothecated with it by J. Hurst Purnell under an agreement in writing. The right of recovery was denied by the defendant in three demurrer prayers, which were granted, and, from the judgment entered on the verdict for the defendant, this appeal is taken.

J. Hurst Purnell, operating as J. Hurst Purnell, Incorporated, and herein referred to as Purnell, was engaged in the business of building and selling houses. In order to finance his operations a plan was devised, whereby a deed for the property sold was given by Purnell to the purchaser. A first mortgage was given to some financial institution to secure a loan with which to make the first payment. A second mortgage was then given, the

payment of which was guaranteed by Purnell in a hypothecation agreement, which in this case provides that, at the request of Purnell, the Equitable Building and Savings Association of Baltimore City has granted a loan of $5000, applied for by Robert E. Sandell and Elsa O. Sandell, his wife, to be secured by a second mortgage on 4403 Wickford Road. The first mortgage for $7500 was held by the Safe Deposit and Trust Company of Baltimore City. The hypothecation agreement further provides that, "in consideration of $1.00 and of the making of said loan and any other loan that may be made at the request of the party of the first part, it, for itself, its successors and assigns hereby guarantees the payment of all such loans in full, both principal and interest, according to the terms thereof. And as additional security for all such loans the party of the first part will from time to time deposit with the party of the second part in Book No. 5118 such sums as shall be fixed in the applications for loans and any and all money so deposited is hereby assigned to the party of the second part so that in case of default in any of said mortgages and the consequent sale of the mortgaged property all or any part of the money so deposited may be applied by the party of the second part to make up any deficiency shown by the auditor's account in the proceedings to foreclose any such mortgage or mortgages. All money on deposit in said Book No. 5118 shall be entitled to the regular dividends paid by the party of the second part to free shareholders. The money required to be deposited as cash security for this loan is $2000 and when the mortgagors have paid $4000 on the principal of this loan and there has been no default, the party of the first part shall have the right to withdraw $2000."

This suit was brought to recover this $2000, in view of the provisions of the hypothecation agreement. The $4000 was not only paid, but the entire mortgage debt of $5000 was paid in full on September 4th, 1931, and, at the time of the payment and of the demand for the refund of $2000, it was shown that no default had oc-

curred as stated in the hypothecation agreement. Nevertheless, the appellee contends that it is entitled to retain that sum, so hypothecated, as security for the payment of all other mortgages, whether for the payment on this property or on other properties, made at the request of Purnell. During the period from 1929 to 1933 Purnell had erected several houses on certain of his lots and sold them, adopting the plan for financing their purchase above indicated. These properties, upon which there were mortgages to the appellee, were made at the request of Purnell, and known as, first, 4300 Wickford Road, sold to John Elmer and wife, upon which a second mortgage of $5000 was given. As additional security $1750 was pledged, with the right to withdraw it when $3500 was paid on account of the mortgage. Second, 4403 Wickford Road, sold to Robert E. Sandell and wife, upon which a second mortgage of $5000 was given, and $2000 was deposited as additional security for the loan, with the right to withdraw it when $4000 was paid on account, as above indicated, and concerning which the above hypothecation agreement was made. This is the property, the mortgage and the payment which are here involved. Third, 4419 Wickford Road, sold to Leonard B. Nelson and wife, upon which a second mortgage of $3900 was given and a deposit of $1063 was made, with the right of withdrawal when $2600 was paid on account of the mortgage. Fourth, 4417 Wickford Road, sold to John Hanson Mitchell and wife, upon which a second mortgage for $3300 was given, and upon which there was a cash deposit, for additional security, of $413, with the right of withdrawal when $826 was paid on account of the mortgage. It should be here stated that the appellee permitted the withdrawal of the $413 hypothecated by Mitchell in connection with the sale of the property when the payment of $826 was made. This hypothecation and withdrawal were under the same terms and conditions as that of the Sandell transaction. This action upon the part of the parties will be later referred to, as it aids in the construction of the hypothecation agreement,

by showing the manner in which these agreements were regarded by Purnell and the appellee. The property of Leonard B. Nelson, or 4419 Wickford Road, was sold under foreclosure proceedings, and the auditor's account of May 20th, 1937, shows a deficiency of $2751.98, and this deficiency was entered against the bank book and deposit of Purnell, charging the money, hypothecated by him with respect to the property 4403 Wickford Road, with the deficiency resulting from the default and foreclosure on property of Leonard B. Nelson or No. 4419 Wickford Road.

On June 12th, 1933, the appellants, as assignees of Purnell of the said $2000, demanded its payment, but the appellee refused to pay this money for the reason above recited, and the appellants brought suit for its recovery, which action was disposed of in the lower court as above indicated.

The case herein involves the construction of the hypothecation agreement, as it relates to the deposit of the $2000 and the right of its withdrawal by the appellants. There are well established rules to aid the courts in construing contracts, where there is doubt as to the intention of the parties. The language employed, the subject matter of the agreement, the circumstances surrounding its execution, and its purpose and design, have always been accepted as guides of first importance in arriving at the intention of the parties. *Lambdin v. Dantzebecker*, 169 Md. 240, 245, 246, 247, 181 A. 353; *Danzer & Co. v. Western Maryland Railway Co.*, 164 Md. 448, 462, 165 A. 463; *Myers v. Myers*, 153 Md. 44, 48, 137 A. 501; *Ess-Arr Knitting Mills v. Fischer*, 132 Md. 1, 8, 103 A. 91; *Phoenix Pad Mfg. Co. v. Roth*, 127 Md. 540, 544, 96 A. 762. The specific language of the agreement, the plan adopted and adhered to by the parties, the deposit being the subject matter of the property involved, the very nature of the transaction, all indicate an intention to repose in the pledgor or his assigns an unrestricted right of withdrawal, when his obligation with respect to the specific debt was discharged.

Equally well settled is the rule that where two clauses or parts of a written agreement are apparently in conflict, and one is general in character and the other is specific, the specific stipulation will take precedence over the general, and control it. Here, in spite of some general stipulations such as the guaranty of "all such loans in full" and "any other loans made at his request," we have the clear and direct provisions as to the right of withdrawal of the $2000 upon the definite condition of the payment of $4000 on account of the second mortgage. This $2000 was a deposit with the appellee and when the mortgage was paid in full it would seem that this $2000 ceased as a pledge and reverted to and became an unconditional deposit of Purnell or his assigns. Where the provisions in question may be reconciled and accepted as binding on the parties, no one of them ought to be rejected, and this may be done in this case by construing the words "any other loan made at his request" as applied to any other loan in connection with the property sold to Robert E. Sandell, and to aid in this construction it is contended with force and conviction that the giving of a separate hypothecation agreement identical in form with respect to each of the four properties constitutes separate and distinct transactions and contracts with respect to each of the properties, and the hypothecation agreements are not inclusive of all the properties and all loans made upon them, and the parties to these agreements must have entertained this view, as indicated by their actions and their conduct with respect to property sold to John Hanson Mitchell, under the conditions above recited, wherein $413 was deposited and refunded or withdrawn upon the payment of $826 on account of the second mortgage. This is precisely what the appellants claim as their rights in the case at bar. In 13 *C. J.* 346, sec. 517, with supporting authorities, the rule is stated to be, "Where the parties to a contract have given it a practical construction by their conduct, as by acts in partial performance, such construction is entitled to great if not controlling weight in determining its proper interpretation, particularly

where such interpretation is agreed on before any controversy has arisen. But practical construction is not conclusive, and may be considered only when the contract, read in the light of surrounding circumstances, leaves the proper construction in doubt. The practical construction put on a contract by the parties cannot control the express unambiguous provisions of the instrument itself, and further, a practical construction, to be adopted, must be reasonable." It cannot be doubted that the construction the parties place upon the contract by their conduct must be given weight. *American Syrup Co. v. Roberts,* 12 Md. 18, 23, 76 A. 589; *Dexter etc. Paper Co. v. McDonald & Fisher,* 103 Md. 381, 63 A. 958; *Mitchell v. Wedderburn,* 68 Md. 139, 145, 11 A. 760; *Citizens' Fire Ins. Security & Land Co. v. Doll,* 35 Md. 89, 90; *Powers Foundry Co. v. Miller,* 166 Md. 590, 599, 171 A. 842; *Am. Law Inst. Contracts, Restatement,* sec. 235e. Paying the sum of $826 and receiving the sum of $413 hypothecated in connection with the sale of the Mitchell property, under the terms, conditions and circumstances of the instant case, placed upon the contract the construction for which the appellants are contending.

There is further contention on the part of the appellants that the words of a written contract are to be taken more strongly against the draftsman employing them. *Varnum v. Thurston,* 17 Md. 470. This court has stated with respect to the above rule of construction that "the company drew the contract, and it is a rule common to the construction of all written instruments that it is to be taken, in cases of doubtful meaning, against the draftsman." *Brownstein v. New York Life Ins. Co.,* 158 Md. 51, 59, 148 A. 273, 276. The hypothecation contract in this case was upon forms prepared by the appellee, and in such cases it has been said that the above rule is especially applicable. 13 *Corpus Juris* 545, sec. 516; *Mt. Vernon Refrigerating Co. v. Fred W. Wolf,* 188 Fed. 164.

Applying these rules of construction to the situation as we find it in this case, it would seem that the right of the appellants as assignees of J. Hurst Purnell to withdraw the $2000 is established. It is the contention of

the appellee that the right of set-off should be applied, that is, that the $2000, or so much thereof as is necessary, should be applied or charged to the payment of any sums of money due and owing by Purnell to the appellee, but whatever may be said of that suggestion as a legal abstraction, it is not applicable to the facts in this case, for on September 4th, 1931, the Sandell mortgage was paid in full and released, and at that time, nor at the time of the assignment made to the appellants, which occurred on June 11th, 1931, nor at the time demand was made upon the appellee. by the appellants, there was no default on this particular mortgage, and there was no default of any kind in any of the mortgages on any of the properties. Therefore, there was no debt upon which the $2000 or any part thereof could be applied. This money belonged to the appellants, no plea of set-off was filed, there were only general issue pleas. Aside from this, the kind of default contemplated as set forth in the agreement was that occurring upon foreclosure resulting in a deficiency as shown by the audit to be stated in the foreclosure proceeding, and no such default in any of the mortgages or any of the properties had occurred on June 12th, 1933, at which time the appellants demanded the return or payment of $2000. The terms of the agreement in question in that respect are as follows: "That in case of default in any of said mortgages and the consequent sale of the mortgaged property all or any part of the money so deposited may be applied by the party of the second part to make up any deficiency shown by the auditor's report in the proceedings to foreclose any such mortgage or mortgages." The prayers of the defendant, the appellee herein, Nos. 1, 2 and 3, which are ordinary demurrer prayers, directing a verdict for the defendant, should not have been granted.

Entertaining these views the judgment from which this appeal is taken must be reversed.

*Judgment reversed with costs to appellants,*
*and case remanded.*