## SERVICE REALTY COMPANY, INC. *v.* LUNTZ

[No. 182, October Term, 1955.]

230

*Decided June 7, 1956.*

The cause was argued before BRUNE, C. J., and DELA-
PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Seymour O'Brien,* with whom were *Samuel Cooper, Ben-
jamin C. Howard* and *Harrison L. Winter* on the brief, for
the appellant.

*Harry E. Goertz* and *Joseph Loeffler,* with whom was *Isador
Deckelman* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Service Realty Company, Inc., appellant,
from a judgment rendered against it in the amount of $3,845.35,
with costs, on a jury verdict in favor of the appellee, Herbert
Luntz.

The appellant has been engaged in the real estate business
in Baltimore City for some years. In July, 1946, it was ap-
proached by the appellee, Herbert Luntz, and employed him
as a salesman under an oral contract. The terms of this oral
contract were not reduced to writing and are in dispute. Mr.
David M. Klein, the President of appellant, testified that the
terms of the employment of the appellee "were that he would
be paid his commission when the House had received its com-
mission from the sellers." Mr. Philip E. Klein, the Treasurer
and Sales Manager of appellant, testified that when the appellee
was employed "the agreement was to the effect that the com-

mission would be paid at the time that it was received by us. In other words, when we would receive our commissions—." He was to be paid when appellant was paid. The appellee testified that he stopped to see Mr. Philip E. Klein in an effort to obtain a position with appellant corporation as a real estate salesman. He had an interview with Mr. Philip Klein and Mr. David Klein and was hired as a salesman. He testified that the terms of his employment were that he "was to receive one-half of the commission at that time which represented two and a half per cent of the total commission that was earned on a sale." When asked whether anything was said at that time as to when the commissions were to be considered as earned, he replied: "Well, the commissions were earned at any time when I would bring in a signed contract by both parties that did not have any contingencies such as financing to be obtained." All parties agree that the agreement was never changed or modified.

In September, 1951, Mr. Luntz was assigned by the appellant to the sale of a property in a development known as Western Run Drive which was being constructed by a Mr. Wachs. Mr. Wachs and the appellant had entered into a brokerage contract for the sale of properties, ten of which are involved in this appeal, by which the appellant was to receive what is known as a builder's commission of two and one-half percent of the purchase price for each property, with the exception of one piece of unimproved property on which the commission was fixed at $200.00. Appellant thereafter obtained contracts for the purchase of the ten parcels of real estate in that development. The appellee claims that deposits were paid by the purchasers on all of these sales. Some of the checks were made payable to the appellant, others drawn to the order of the builder, and one deposit was made in cash. The appellee also claims that all of these deposits were surrendered by the appellant to Mr. Wachs. It was admitted that appellant made certain loans to Mr. Wachs during the building operation. The Treasurer of appellant said: "I think now they were loans for a payroll period, to help him out at that time, and I think that they were in the amount of fifteen hundred or two thousand dollars, at least, on one or two occasions when we

loaned it to him." He further stated that all of these loans were repaid by Mr. Wachs.

The appellant claims it never collected the commissions due from Mr. Wachs, which had been earned for the sale of these ten properties. It refused to pay the appellee, Mr. Luntz, for his one-half of those commissions; that is, the sum of $3,845.35, as his claimed part of the commissions for the sale of the aforesaid ten properties. Upon failure of the appellant to pay, the appellee on July 29, 1953, filed suit against the appellant for said sum of $3,845.35. From a judgment for that amount, with costs, entered on a jury's verdict for the appellee, the appellant appeals here.

The primary question in dispute at the trial below was as to the terms of the agreement between the appellant and the appellee. As aforesaid stated, the appellant contended that, under the terms of the oral agreement, the appellee was not entitled to receive any commissions from it unless the appellant received the commissions. The appellee, on the other hand, contended that, under the oral agreement, he earned his portion of the commissions at the time he produced a contract for the sale of the properties and that the payment of those commissions did not depend in any way upon their ultimate collection by the appellant.

The case comes to this Court on objections to the rulings of the trial judge on the admissibility of evidence.

The appellant sought to introduce in evidence cards kept by it showing the sales of properties by Mr. Luntz from January 8, 1948, to July 1, 1952, other than the ten for which appellee is here suing for commissions. These cards purported to show the date of the contract with the purchaser, the date the commissions were received by the appellant, and the date the commissions were paid or credited to Mr. Luntz. The purpose was to show that, on sales made by the appellee, the commissions were not paid or credited to him on those sales until after the commissions were received by the appellant. The trial judge did not admit these cards in evidence, apparently for the reason that they did not relate to the commissions sued for on the ten sales. Also, on direct examination, Mr. Philip E. Klein was asked whether Mr. Luntz was ever paid any

commissions "from the years 'Forty-seven to 'Fifty-two, where the House had not first received the commission?" The court sustained an objection to that question. The appellant also assigns this as error.

The appellee contends that these cards kept by the corporation were merely declarations in its own favor and not admissible within the general rule as to evidence of a self-serving character. He relies on *Schwaber v. Hargest,* 184 Md. 198, 204, 40 A. 2d 336; *Brune, Corporation Law,* (1953 Ed.), page 405; 9 *Fletcher, Cyclopedia Corporations,* (Perm. Ed.), page 481. However, the appellee testified that he had an opportunity to examine the records and books of account of the corporation pertaining to his own accounts. He further said: "Well, there was a card record set up for each of the salesmen in the office which showed the commission that had been earned and was due to that salesman, on the sales that had been made by that particular salesman." When asked whether he had occasion to check on the commissions and whether the commissions on the cards were a part of the records of the appellant, he replied: "Yes." He denied seeing the particular cards offered in evidence. He further stated that none of the books of the company were ever kept from him. He did not ask for the books there except for the cards that were kept for each of the salesmen. Later in his testimony, he said: "These are not the cards I am referring to." It is difficult to tell from the record just what cards he referred to in this last statement. The bookkeeper of appellant also testified that appellant's records were open to Mr. Luntz and that he actually looked at the records pertaining to his account. It is stated in 5 *Fletcher on Corporations,* (1952, Rev. Vol.), Sec. 2205, pg. 723: "The admissibility of corporate books and records as against strangers to the corporation or third persons generally is controlled by the rules of evidence relating to private books and records generally. Except as the third person may be shown to have known of and assented to or acquiesced in the particular entries therein with which it is sought to charge him, or except as the matter may be specifically regulated by statute, corporate books and records are not admissible against him to establish claims or contracts of the corporation against him.

The third person may, of course, stand in such relation toward the corporation as to be chargeable with knowledge of the contents of its books with respect to his contract relations with it so as to make the books admissible against him." See also *Institute of Protestant Deaconesses v. Lingenfelser,* 296 Pa. 493, 146 A. 123; *Wilkes v. United States,* 80 F. 2d 285. These cards seem to be records kept in the ordinary course of business for the mutual advantage of both the appellant and the appellee and available to inspection by all the parties here concerned. Therefore, they do not appear to be mere self-serving declarations of the appellant, as contended by the appellee.

Of course, it is a principle of universal application that, in order to arrive at the intention of the parties, the contract must be examined in the light of the circumstances under which it was entered into. *Babcock & Wilcox Co. v. Moore,* 62 Md. 161, 163; *First National Bank of Baltimore v. Gerke,* 68 Md. 449, 456, 13 A. 358; *Roberts v. Bonaparte,* 73 Md. 191, 20 A. 918, 10 L. R. A. 689. It is stated in *Brantly on Contracts,* (2d Ed.), page 273: "If the contract is oral, it is the province of the Jury in the event of a controversy to decide what terms were actually agreed upon by the parties." *Roberts v. Bonaparte, supra.*

It was said by this Court in the case of *Citizens' Fire Ins., etc., Co. v. Doll,* 35 Md. 89, 107, where a written instrument was before the Court: "And although it is very true, as contended by the appellee, that there were an agreement is plain and free from all ambiguity, it will not be construed by the acts and admissions of the parties in reference to it, yet, where the intention is obscure or doubtful, and extrinsic evidence can be invoked, no evidence is more reliable or entitled to greater consideration, as manifesting what their intention was, than the acts and conduct of the parties themselves." In *Baltimore & Ohio R. R. Co. v. State,* 45 Md. 596, 614, certain provisions of the charter of the Baltimore and Ohio Railroad were before this Court for interpretation. This charter was treated as a contract. Although the Court held that the contract was free from doubt, it was there said: "Where the meaning of a contract is doubtful, the construction put on it by the parties, and their acts under it, may be resorted to, to determine its true

construction. *Citizens F. I. Co. v. Doll,* 35 Md. 107; *Chicago v. Sheldon,* 9 Wall. 54; *R. R. Co. v. Trimble,* 10 Wall. 54." The principle that construction placed upon a contract by both parties, before any controversy has arisen, is important in aiding in its construction, was reaffirmed by this Court in *Hurt v. Casualty Ins. Co.,* 175 Md. 403, 407, 2 A. 2d 402. *Mattingly Lumber Co. v. Equitable Bldg. & Savings Assn.,* 176 Md. 403, 408, 409, 5 A. 2d 458. It was said in *Mortgage Corp. v. Debenture Corp.,* 178 Md. 658, 674, 16 A. 2d 866: "The construction which the parties place on a contract by their negotiations and statements at the time of the making of the contract, and their conduct and declarations subsequent thereto, before a controversy has arisen, is extremely significant in determining their intention. *Mattingly Lumber Co. v. Equitable Bldg. & Sav. Assn.,* 176 Md. 403, 5 A. 2d 458; *Powers Foundry Co. v. Miller,* 166 Md. 590, 171 A. 842; *J. M. Ceballos & Co. v. United States,* 214 U. S. 47, 29 S. Ct. 583, 53 L. Ed. 904." See also *Alumni Assn. v. American Pub. Co.,* 195 Md. 150, 156, 157, 72 A. 2d 735; *Levin v. Stratford Plaza, Inc.,* 196 Md. 293, 307, 76 A. 2d 558. It is stated in part in 12 *Am. Juris.,* Section 249: "It is to be assumed that parties to a contract know best what was meant by its terms and are the least likely to be mistaken as to its intention; that each party is alert to protect his own interests and to insist on his rights; and that whatever is done by the parties during the period of the performance of the contract is done under its terms as they understood and intended it should be. Parties are far less likely to have been mistaken as to the meaning of their contract during the period when they are in harmony and practical interpretation reflects that meaning than when subsequent differences have impelled them to resort to law and one of them then seeks an interpretation at variance with their practical interpretation of its provisions."

In *Scotch Mfg. Co. v. Carr,* 53 Fla. 480, 482, 43 So. 427, it was held that, where there is some conflict in the testimony as to just what language was used by the contracting parties in making an oral contract, the construction placed upon the terms and conditions of the contract by the parties themselves may be shown and is important. In *Kitchens v. Lee,* (S. C.,

1952), 69 S. E. 2d 67, 69, it was said as to the interpretation of an oral contract: "The repeated payments by appellant and long-continued and unqualified acceptances by respondent are conclusive of their respective interpretations of the terms of the contract, by which both are bound even if there were uncertainty as to the terms of the contract." It is stated in *Restatement of the Law of Contracts,* Section 235 (e): "If the conduct of the parties subsequent to a manifestation of intention indicates that all the parties placed a particular interpretation upon it, that meaning is adopted if a reasonable person could attach it to the manifestation."

Although the aforesaid cards, which the appellant sought to introduce in evidence, did not represent the ten sales, the commissions for which the appellee sued in this case, they did show how commissions were paid or credited under other sales made by the appellee while working under the same contract with the appellant. They shed light upon the interpretation placed by the parties on the oral contract and should have been admitted in evidence, the weight of such evidence being a question for the jury. For the same reason Mr. Philip E. Klein should have been permitted to answer whether the appellee had ever been paid any commissions under the same contract from 1947 to 1952, where the appellant had not first received the commissions. For these reasons the judgment must be reversed and a new trial awarded.

The appellant also sought to introduce in evidence its ledger sheet showing the drawing account of the appellee. This showed the exact dates that commissions on various sales made by the appellee were credited to his account. The cards, which we have hereinbefore held should have been admitted in evidence, showed the dates of the contracts of sale, the dates commissions were received by the appellant, and the dates commissions were paid or credited to Mr. Luntz. The drawing account showed merely when the commissions were credited to appellee's account, and did not show any relation between the dates of the contracts and the dates commissions were received by the appellant. Therefore, it bore no relationship to the question of whether commissions were paid or credited to the appellee before or after receipt by the appellant. Furthermore, the ap-

pellee definitely testified that he never saw this ledger sheet containing his drawing account. We are of opinion that the trial judge was correct in not admitting this into evidence.

The appellant further claims that the trial judge erred in not permitting Mrs. Alvin Nusbaum, its bookkeeper, to answer the following question: "Could you tell us briefly, just what type of account Herbert Luntz had there with your Firm at the time that he began his employment?" This question appears irrelevant to the question presented and the objection was properly sustained. The appellant also contends that the court erred in not allowing Mrs. Nusbaum to answer the following question: "Did you ever pay a bill before the Firm collected the commission?" This question appears to be vague and uncertain and does not specify to what bill appellant referred. The objection to that question was properly sustained.

*Judgment reversed, with costs,
and new trial awarded.*