30 A.3d 1003

**Richard RAMLALL**

v.

**MOBILEPRO CORP., et al.**

**No. 01309, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

Oct. 28, 2011.

22

Stanley R. Jacobs, Stevensville, MD, for appellant.

Patrick R. Buckler (Spence & Buckler, PC, on the brief), Towson, MD, for appellee.

Panel: WOODWARD, WRIGHT and MATRICCIANI, JJ.

MATRICCIANI, J.

On June 4, 2009 appellant, Richard Ramlall, filed a complaint against appellees, MobilePro Corp. and CloseCall America, Inc., in the Circuit Court for Montgomery County seeking damages of $144,999.99 for breach of contract. On May 18, 2010 the circuit court granted MobilePro's motion for summary judgment, and following a bench trial on July 14, 2010 the circuit court granted CloseCall's motion for judgment. Ramlall presents two questions for our review, which we have rephrased as follows:

I. Did the circuit court err in granting MobilePro's motion for summary judgment?

II. Did the circuit court err in granting CloseCall's motion for judgment?

For the reasons set forth below, we affirm the judgment of the circuit court as to MobilePro, and vacate the judgment of the circuit court as to CloseCall and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

### The Parties

There are three parties to this case: appellant Richard Ramlall, appellee MobilePro Corp., a Delaware Corporation ("MobilePro"), and appellee CloseCall America, Inc., a Delaware corporation ("CloseCall (DE)"). Two other corporations play a role. MVCC Acquisition Corp. is a Delaware corporation ("MVCC") and a wholly owned subsidiary of MobilePro. CloseCall America, Inc. ("CloseCall (MD)") was a Maryland corporation and is Ramlall's former employer. MVCC and CloseCall (MD) merged in October of 2009, and the surviving corporation assumed the name CloseCall (DE) and remained a subsidiary of MobilePro.

### The Billing Dispute

In 2002 CloseCall (MD) hired Ramlall to negotiate a billing dispute among CloseCall (MD), Verizon Maryland Inc., and

Verizon New Jersey Inc. (collectively "Verizon"). The record does not reveal the details of the dispute, but it seems that Verizon and CloseCall (MD) entered into various arrangements under which Verizon provided telecommunication services and facilities to CloseCall (MD). At some point, Verizon began billing CloseCall (MD) for "voice services" that Close-Call (MD) claimed it had not received. Litigation between the parties followed, and CloseCall (MD) also filed a complaint against Verizon with the Maryland Public Service Commission.

Ramlall assisted CloseCall (MD) by preparing and responding to interrogatories, collecting and investigating prior bills, and advising CloseCall (MD) based on his experience as a former employee of Verizon. As a result of the billing dispute, CloseCall (MD) withheld monies from Verizon's monthly bills that accumulated to $2,209,866. Verizon sued CloseCall (MD) to recover that amount and CloseCall (MD) filed counterclaims. The two eventually negotiated a settlement whereby CloseCall (MD) would pay Verizon between $750,000 and $800,000, Verizon would waive its claims to $1,459,886 of the withheld monies, and CloseCall (MD) would waive its counterclaims and stipulate to a dismissal with prejudice of its complaint before the Public Service Commission.

Ramlall was one of the lead negotiators during this settlement process, along with former CloseCall (MD) employees Tom Mazerski and Greg Van Allen. CloseCall (MD) and Ramlall initially agreed to an hourly rate of $110 for Ramlall's compensation. At a certain point in the billing dispute, Ramlall began working more billable hours than CloseCall (MD) could afford to pay him. CloseCall (MD) advised Ramlall that it was capping his billable time at twenty hours per week and instructed him to keep track of any additional hours he worked. The parties later negotiated a contingent "bonus" fee to be divided equally by Ramlall, Mazerski, and Van Allen.

### *The Merger*

Before Ramlall could collect his fee, CloseCall (MD) merged

with MVCC and subsequently dissolved.[1] MVCC incorporated in Delaware on August 4, 2004. MVCC was a wholly owned subsidiary of MobilePro and was created for the express purpose of merging with CloseCall.[2] On August 31, 2004 MobilePro, MVCC, and CloseCall (MD) entered into an Agreement and Plan of Merger ("merger agreement"). The parties amended the merger agreement on September 1, 2004. Amended section 1.2 provides

> Effect of the Merger; Closing. At and after the Effective Time, the Merger shall have the effects set forth in this Agreement and the applicable provisions of Delaware Law and Maryland Law. At the Effective Time all the property, rights, privileges, powers and franchises of [CloseCall (MD) ] and [MVCC] will vest in the Surviving Corporation, and all debts, liabilities and duties of [CloseCall (MD) ] and [MVCC] not paid by [CloseCall (MD) ] and [MVCC], respectively, at or before Closing will become the debts, liabilities and duties of the Surviving Corporation.

The merger agreement incorporated a disclosure statement from CloseCall (MD) to MVCC. Section 2.14 of the disclosure statement reads, in relevant part:

---

1. Ramlall asserts that MVCC is a Maryland corporation that dissolved on October 14, 2004. Ramlall's theory is that CloseCall (MD) merged with the Maryland version of MVCC, and the October 14, 2004 dissolution of this Maryland corporation effectively dissolved CloseCall (DE). Ramlall argues that because of this procedural error in the merger scheme, MobilePro is liable for the debts of the unincorporated Close-Call (DE). Ramlall is mistaken about the corporations involved in the merger. There was an MVCC Acquisition Corp. incorporated in Maryland, but it was not involved in these proceedings. That MVCC Acquisition Corp., incorporated in Maryland on August 30, 2004 and subsequently dissolved on October 14, 2004, played no part in this case.

2. This method of acquisition is known as a "forward triangular merger." Under this scheme, the buyer (here, MobilePro) creates an acquisition subsidiary (here, MVCC). The target (here, CloseCall (MD)) then merges into the acquisition subsidiary. After the merger, the target dissolves and the merged acquisition subsidiary remains. W. Fletcher, 14A Cyclopedia of the Law of Corporations § 7011 (2008) ("___ Fletcher § ___").

Verizon—billing disputes. [CloseCall (MD)] has, since approximately 2002, been involved in a billing dispute with Verizon. The Compensation Committee of CloseCall [(MD)] have agreed that, in the event the disputes were resolved in favor of CloseCall [(MD)], a bonus equal to 10% of the refund shall be paid to three CloseCall [(MD)] employees: Tom Mazerski, Greg Van Allen and Richard Ramlall. The obligation will remain in place after the consummation of the merger.

The effect and interpretation of section 1.2 of the merger agreement and section 2.14 of the disclosure statement will be discussed in more detail below. MVCC and CloseCall (MD) merged on October 15, 2004, after which MVCC survived as the successor corporation and CloseCall (MD) dissolved. As noted above, MVCC then changed its name to CloseCall (DE). Thus, the surviving Delaware corporation created by the merger of CloseCall (MD) into MVCC is appellee CloseCall (DE).

### The Lawsuit

Neither CloseCall (DE) nor MobilePro paid Ramlall's bonus fee, which he alleged was $48,333.33.[3] Ramlall filed a complaint in the Circuit Court for Montgomery County on June 4, 2009. In his amended complaint, filed on August 21, 2009, Ramlall sought treble damages of $144,999.99 under the Maryland Wage Payment and Collection Law,[4] plus interest, attorney's fees, and costs. Ramlall argued that CloseCall (DE) is liable for his bonus fee because it is the successor corporation to the merger between CloseCall (MD) and MVCC. Ramlall argued further that MobilePro, as parent corporation of Close-

---

3. At trial, defense counsel for CloseCall (DE) noted that there were conflicting calculations of the bonus fee, and argued that the bonus agreement therefore was so vague as to be unenforceable. This argument has no bearing on our holding here, but as discussed below, will need to be resolved by the circuit court on remand.

4. Md.Code (1991, 2008 Repl. Vol.), §§ 3–501 to 3–509 of the Labor & Employment Article.

Call (DE), is responsible for the debts and liabilities of Close-Call (DE).

The parties filed cross-motions for summary judgment in March of 2010. The circuit court held a motions hearing on May 18, 2010, after which it denied Ramlall's motion for summary judgment, denied CloseCall (DE)'s motion for summary judgment, and granted MobilePro's motion for summary judgment.

The circuit court conducted a bench trial on July 13, 2010. At the close of Ramlall's case, CloseCall (DE) moved for judgment, arguing, among other things, that "an objective interpretation of the purported bonus agreement reveal[ed] that Ramlall would only be paid if there was a refund, and there was no refund." The circuit court then engaged in the following colloquy with Ramlall's trial counsel, Stanley Jacobs:

THE COURT: Why isn't 2.14 controlling as to what the basis of the claim is? Section 2.14.

MR. JACOBS: I don't think it is.

THE COURT: You don't think it is?

MR. JACOBS: No, sir.

\*     \*     \*

I think you get the witness, you've got three witnesses testifying, one who is CEO and president of the company that he made a promise to him to pay him a bonus. All the details of the bonus are in. I don't think there is any question about the amount or anything like that. And you've got emails in there from the other side confirming the payment of a bonus. So I don't know that this document really is something to explain it. Thank you.

THE COURT: Well, the email that you're referring to is identified as Plaintiff's Exhibit 6, I think it's also a duplicate of another exhibit. But specifically, it's an email from Mr. Van Allen which refers again to section 2.14. And where the plaintiff is making the claim of entitlement to a bonus, and that bonus is based upon ten percent of a refund that was received by CloseCall.

I mean, I certainly understand what has been testified to here today, but plaintiff is claiming entitlement to a bonus, and the bonus is based upon a refund. There is no evidence that the refund was paid out. Accordingly, I'll grant the motion for judgment.

The circuit court entered an order granting judgment in favor of CloseCall (DE) on July 14, 2010. Ramlall timely noted an appeal to this Court on August 5, 2010.

## DISCUSSION

### I. Summary Judgment for MobilePro

Ramlall argues that MobilePro exercised sufficient control over CloseCall (DE) to justify piercing the corporate veil of CloseCall (DE) and holding MobilePro liable for CloseCall (DE)'s debts and obligations.[5] MobilePro counters that it is a separate corporate entity from CloseCall (DE) and cannot be held liable for the obligations of CloseCall (DE) solely by virtue of its ownership of and control over CloseCall (DE). At the May 18 motions hearing, the circuit court held:

"[g]oing to the first issue of whether or not defendant MobilePro is an appropriate defendant, [Ramlall] has established no basis to pierce the corporate veil. There's no evidence that MobilePro was responsible for the debts of [CloseCall (DE)], or that MobilePro entered into the agreement with plaintiff. Therefore, summary judgment is granted to defendant MobilePro Corporation."

### Standard of Review

Summary judgment is proper where the motion and response show that there is no genuine dispute as to any

---

**5.** Ramlall also believes that after the merger between MVCC and CloseCall (MD), "MobilePro is liable since CloseCall [MD] exists as an unincorporated entity owned by MobilePro." Further, Ramlall questioned whether the merger was properly recorded. These arguments are unsupported by the record, and Ramlall cites no case law to explain the effect of his contentions. We find these arguments to be unpersuasive for purposes of reviewing the circuit court's grant of MobilePro's motion for summary judgment.

material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law. Md. Rule 2–501(f). We review the circuit court's grant of a motion for summary judgment *de novo* and ask whether the trial court was correct as a matter of law. *Chesek v. Jones,* 406 Md. 446, 458, 959 A.2d 795 (2008). We review the factual record independently and view all facts and inferences in a light most favorable to the non-moving party. *David A. Bramble, Inc. v. Thomas,* 396 Md. 443, 453–54, 914 A.2d 136 (2007). We first examine whether a genuine dispute of material fact exists; if there is no dispute of material fact, we next determine whether the trial court was correct in granting summary judgment as a matter of law. *Hines v. French,* 157 Md.App. 536, 549, 852 A.2d 1047 (2004). "A material fact is a fact the resolution of which will somehow affect the outcome of the case." *Id.* (quoting *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985)).

A review of the record shows that there is no dispute of material fact. Ramlall's confusion over the parties to, and effect of, the October 15 merger notwithstanding, the record does not reveal any facts that could affect the outcome as to MobilePro. As such, we proceed to review the circuit court's conclusion of law. In other words, we are to determine whether the circuit court was legally correct in concluding that MobilePro could not be held liable for CloseCall (DE)'s obligations—whatever they may be.

### MobilePro's Liability for Ramlall's Bonus

The Court of Appeals set forth the standard for piercing the corporate veil in *Bart Arconti & Sons, Inc. v. Ames–Ennis, Inc.:*

> The most frequently enunciated rule in Maryland is that although courts will, in a proper case, disregard the corporate entity and deal with substance rather than form, as though a corporation did not exist, shareholders generally are not held individually liable for debts or obligations of a corporation except where it is necessary to prevent fraud or enforce a paramount equity.

275 Md. 295, 310, 340 A.2d 225 (1975). Thus, we may pierce the corporate veil of CloseCall (DE) only based on fraud or proof that it is necessary to enforce a paramount equity.

Understandably, Ramlall asserts that securing payment of his bonus fee is a paramount equity. We have previously stated, however, that "[d]espite the proclamation that a court may pierce the corporate veil to enforce a paramount equity, arguments that have urged a piercing of the veil for reasons other than fraud have failed in Maryland courts." *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 126 Md.App. 294, 307, 728 A.2d 783 (1999) (internal quotation and citation omitted). Further, "[n]otwithstanding its hint that enforcing a paramount equity might suffice as a reason for piercing the corporate veil, the Court of Appeals to date has not elaborated upon the meaning of this phrase or applied it in any case of which we are aware." *Travel Committee, Inc. v. Pan American World Airways, Inc.*, 91 Md.App. 123, 158, 603 A.2d 1301 (1992). With no precedent approving this extraordinary remedy, we decline to pierce the corporate veil of CloseCall (MD) to impose liability on MobilePro based on the paramount equity justification.

Maryland courts may also pierce the corporate veil where it is necessary to prevent fraud. *Bart Arconti & Sons*, 275 Md. at 310, 340 A.2d 225. When asking a court to pierce the corporate veil, the "burden of proof is on the one charging fraud to establish by clear, specific acts, facts that in law constitute fraud." *Starfish Condo. Ass'n v. Yorkridge Serv. Corp.*, 295 Md. 693, 714, 458 A.2d 805 (1983) (internal quotation and citations omitted). Ramlall's pleadings, arguments in the circuit court, and briefs to this court fail to allege specific acts of fraud on the part of MobilePro. Further, the mere fact that MobilePro created an acquisition subsidiary to effectuate a forward triangular merger does not constitute fraudulent action. The forward triangular merger scheme has recognized benefits. *See* Balotti and Finkelstein, *The Delaware Law of Corporations and Business Organizations,* § 9.7 (Aspen Law & Business 1998) ("The advantage of this type of

merger is that [the target] will become a wholly-owned subsidiary of [the acquiring corporation] without any change in its corporate existence. Thus, the rights and obligations of [the target], the acquired corporation, are not transferred, assumed or affected."). Based on our review of the record, we hold that Ramlall has not met his burden of establishing fraud by clear, specific acts.

Ramlall's lone piece of evidence supporting his contention that MobilePro exercised control over CloseCall (DE) is that Jay Wright, former CEO of MobilePro and MVCC, exercised signature authority for both companies during the merger. We interpret this argument to be the "instrumentality" justification for piercing the corporate veil that is sometimes recognized in other jurisdictions. *See e.g., National Bond Finance Co. v. General Motors Corp.,* 238 F.Supp. 248 (W.D.Mo.1964) (declining to hold a parent corporation liable for the acts of its subsidiary, but noting that because of the level of control the parent corporation exerted, piercing the corporate veil may be appropriate in some situations). As discussed above, Maryland courts will pierce the corporate veil only where it is necessary to prevent fraud or enforce a paramount equity. *Bart Arconti & Sons,* 275 Md. at 310, 340 A.2d 225. Maryland is more restrictive than other jurisdictions in applying the doctrine. *See Residential Warranty,* 126 Md.App. at 307 n. 13, 728 A.2d 783 (quoting G. Michael Epperson & Joan M. Canny, *The Capital Shareholder's Ultimate Calamity: Pierced Corporate Veils and Shareholder Liability in the District of Columbia, Maryland, and Virginia,* 37 Cath. U.L.Rev. 605, 621 (1988) (stating that Maryland courts "simply have not found an equitable interest more important than the state's interest in limited shareholder liability," and observing that "Maryland courts admit little of the discretion invoked by the courts of neighboring jurisdictions")). Thus, Ramlall's "instrumentality" theory is not a basis to pierce the corporate veil in Maryland.

Without factual evidence to link the merger between Close-Call (MD) and MVCC to fraudulent actions by MobilePro, Ramlall is unable to generate a genuine dispute of material

fact sufficient to defeat MobilePro's motion for summary judgment. The circuit court expressly found that there was no fraud and that no paramount equity was present which required "the intervention of equity's awesome powers." *See Dixon v. Process Corp.,* 38 Md.App. 644, 655, 382 A.2d 893 (1978). We agree, and see no reason to disregard the corporate entity. The circuit court did not err in granting summary judgment in favor of MobilePro.

## II. Judgment for CloseCall (DE)

Ramlall argues that the circuit court entered judgment in favor of CloseCall (DE) by "assuming in error that appellant was to be paid out of a refund." He maintains that the "refund" restriction appears only in the disclosure statement attached to the merger agreement between MVCC and Close-Call (MD). Ramlall argues that because he was not a party to the merger agreement, its "refund" restriction is not binding on him. Instead, Ramlall contends that the operative agreement is an oral contract he made with CloseCall (MD) that contained no such restriction.

CloseCall (DE) contends that the disclosure statement does indeed control the dispute here, as a memorialization of the parties' oral agreement. CloseCall (DE) maintains that, under an objective interpretation of the disclosure statement, we must honor its unambiguous language and hold that Ramlall was owed a bonus only in the event of a refund. Because Verizon never refunded any money to CloseCall (MD) during the billing dispute, CloseCall (DE) argues that CloseCall (MD) did not owe the bonus to Ramlall. Thus, CloseCall (DE) concludes, after the merger CloseCall (DE) did not owe any money to Ramlall.

### Standard of Review

A party may move for judgment at the close of the evidence offered by an opposing party. Md. Rule 2–519(a). When a defendant does so at the close of the evidence offered by the plaintiff in a bench trial, "the court may proceed, as the trier of fact, to determine the facts and to render judgment

against the plaintiff or may decline to render judgment until the close of all the evidence." *Id.* § 2–519(b). Our review of the circuit court's order granting CloseCall (DE)'s motion for judgment is governed by Rule 8–131(c), which provides:

> When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witness.

"The clearly erroneous standard does not apply to the circuit court's legal conclusions, however, to which we accord no deference and which we review to determine whether they are legally correct." *Cattail Assocs. v. Sass,* 170 Md.App. 474, 486, 907 A.2d 828 (2006). "When reviewing a trial court's construction of a contract, we do so as a matter of law." *Id.* (internal citation omitted).

### *CloseCall (DE)'s Liability for Ramlall's Bonus*

Ramlall's argument consists of two parts. First, CloseCall (MD) owed him a bonus that was based on the benefit he obtained for CloseCall (MD) in the settlement negotiations, and that this bonus was not tied to any "refund." Second, if CloseCall (MD) owed Ramlall the bonus, then after the merger between MVCC and CloseCall (MD), CloseCall (MD)'s obligation to pay him a bonus became CloseCall (DE)'s obligation to pay him a bonus. To evaluate whether these arguments have merit, we look first to the corporate law of Maryland, and then to the common law principles of contract interpretation.

### Statutory Merger Provisions[6]

The general rule of corporate liability is that successor corporations are not liable for the debts and obligations

---

6. The merger agreement provides that both Delaware and Maryland corporate law apply. As we shall demonstrate, there is no conflict between the corporate laws of Maryland and Delaware with respect to

of their predecessor corporations. *Baltimore Luggage Co. v. Holtzman*, 80 Md.App. 282, 290, 562 A.2d 1286 (1989).

There are, however, four exceptions to this general rule. The debts and liabilities of the predecessor corporation are imposed on the successor corporation when (1) there is an expressed or implied assumption of liability; *(2) the transaction amounts to a consolidation or merger;* (3) the purchasing corporation is a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape liability for debts.

*Id.* (internal citations omitted) (emphasis added).

■■■ The record does not support exceptions (3) or (4), but it does establish that the transaction between CloseCall (DE)

---

successor corporation liability. Delaware Code title 8 section 259(a) provides:

When any merger or consolidation shall have become effective under this chapter, for all purposes of the laws of this State the separate existence of all the constituent corporations, or of all such constituent corporations except the one into which the other or others of such constituent corporations have been merged, as the case may be, shall cease and the constituent corporations shall become a new corporation, or be merged into 1 of such corporations, as the case may be, possessing all the rights, privileges, powers and franchises as well of a public as of a private nature, *and being subject to all the restrictions, disabilities and duties of each of such corporations so merged or consolidated;* and all and singular, the rights, privileges, powers and franchises of each of said corporations, and all property, real, personal and mixed, and all debts due to any of said constituent corporations on whatever account, as well for stock subscriptions as all other things in action or belonging to each of such corporations shall be vested in the corporation surviving or resulting from such merger or consolidation; and all property, rights, privileges, powers and franchises, and all and every other interest shall be thereafter as effectually the property of the surviving or resulting corporation as they were of the several and respective constituent corporations, and the title to any real estate vested by deed or otherwise, under the laws of this State, in any of such constituent corporations, shall not revert or be in any way impaired by reason of this chapter; but all rights of creditors and all liens upon any property of any of said constituent corporations shall be preserved unimpaired, *and all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said surviving or resulting corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it.* (emphasis added).

and CloseCall (MD) met two of the exceptions to the general non-liability rule. First, section 1.2 of the merger agreement contained an express agreement that CloseCall (DE) would assume all liabilities of CloseCall (MD). Second, the transaction constituted a merger between the two corporations. Ramlall made no allegations regarding the express or implied agreement exception, so we will address only exception (2), which has been codified in Maryland. Maryland Code (1976, 2007 Repl. Vol.), Corporations and Associations Article ("CA") § 3–114(f)(1) provides that, when there is a consolidation or merger, "the successor is liable for all the debts and obligations of each nonsurviving corporation."[7] Under CA §§ 1–101(x)(2) and 3–114(f)(1), CloseCall (DE) is the successor corporation to the October 15 merger, and is therefore liable for all the debts and obligations of CloseCall (MD).

There is little to argue about in the statute. Corporations and Associations Article § 3–114(f)(1) states simply that in the event of a merger, "the successor is liable for *all the debts and obligations* of each nonsurviving corporation" (emphasis added). In granting the power to merge, the legislature may impose conditions on such mergers as it sees fit. 15 Fletcher § 7060. By merging under CA § 3–114, corporations impliedly consent to the conditions as to be bound by them. *Id.* In Maryland, the General Assembly has imposed the condition that when two corporations merge, the debts and obligations of the predecessor corporation become the debts and obligations of the successor corporation. Thus, by merging under the Maryland corporate statutes, CloseCall (DE) consented to be bound by the condition that CloseCall (MD)'s debts and obligations would become its own.

Similarly, the legislature may relieve the successor corporation of burdens or liabilities to which the predecessor corporations were liable. 15 Fletcher § 7109. In Maryland, the

---

7. "Successor" means a "corporation or other entity surviving a merger." CA § 1–101(x)(2). CloseCall (MD) merged with MVCC on October 15, 2004, after which MVCC survived and CloseCall (MD) dissolved. MVCC then changed its name to CloseCall (DE). Therefore, CloseCall (DE) was the successor corporation of the October 15 merger.

General Assembly chose the language *"all* debts and obligations." (emphasis added). It could have chosen language such as "all debts and obligations to the extent disclosed in the merger agreement." For example, in the case of a mere purchase by one corporation of the assets of another company, where there is no consolidation or merger, CA § 3–115 expressly provides that the successor corporation is liable for the debts and obligations of the predecessor corporation only to the extent provided in the articles of transfer. CA § 3–115(c)(1). That the General Assembly chose not to include such relief for the successor corporation here is evidence that it intended no such relief to be available. *See Harden v. MTA,* 277 Md. 399, 413, 354 A.2d 817 (1976) (reasoning that if the General Assembly had intended to include a state agency within the scope of an insurance statute, it would have made a specific provision to that effect).

In holding that a successor corporation was liable for the torts of its predecessor, the United States District Court for the Northern District of Illinois explained the policy of the Delaware statute:

Corporations are largely the molders of their own destinies in acquisition transactions: They may buy assets without assuming liabilities, they may buy stock and preserve the acquired company as a subsidiary (insulating the parent from subsidiary liabilities), they may engage in upstream or downstream mergers, they may consolidate—there is no need to ring all the changes with which a knowledgeable corporate practitioner is familiar. In the products liability area some imaginative courts have begun to circumscribe the conventional corporate law effects of some of those acquisition methods, looking through the transactions to impose "successor" liability (the "de facto merger" notion is such a device). But if an acquiring corporation—for its own business (and perhaps tax) purposes—*chooses* a formal de jure merger, with its familiar consequences of the total assumption of predecessor liabilities, the corporation will not be heard to extract itself from its wholly voluntary and deliberately undertaken actions.

*Krull v. Celotex Corp.,* 611 F.Supp. 146, 149 (N.D.Ill.1985) (emphasis in original).

Maryland's legislative policy is sound. To allow successor corporations to contract around obligations of predecessor corporations would permit corporations to use the merger statute to evade their legal obligations. The Maryland statute, like its counterpart in Delaware, reflects "a strong public policy, designed primarily for the protection of creditors and third parties who dealt in good faith with the predecessor corporation." *Mesa Partners v. Phillips Petroleum Co.,* 488 A.2d 107, 116 (Del.Ch.1984); *See also Morris v. Investment Life Ins. Co.,* 27 Ohio St.2d 26, 272 N.E.2d 105, 111 (1971) ("The very essence of merger is the transfer of assets and the assumption of liabilities.").

The statute means what it says. *See Tribbitt v. State,* 403 Md. 638, 646, 943 A.2d 1260 (2008) ("If the plain language of the statute is unambiguous, the inquiry as to legislative intent ends; we do not then need to resort to the various, and sometimes inconsistent, external rules of construction, for the Legislature is presumed to have meant what it said and said what it meant.") (internal quotation and citation omitted). There is a clear intent in the merger statute to hold successor corporations liable for debts and obligations of predecessor corporations, whether based in contract or in tort, even if they are unclear or unforeseeable. *See The Guayaquil and Quito Railway Co. v. Suydam Holding Corp.,* 132 A.2d 60 (Del.1957) (holding that a judgment creditor of the predecessor corporation could institute a suit against the successor corporation twenty years after the original judgment because, under the merger agreement and Delaware corporate law the successor corporation assumed the liabilities of the predecessor corporation). CloseCall (DE) is thus obligated to Ramlall in the same manner that CloseCall (MD) was obligated to Ramlall. The question remains, what is that obligation?

### Construction of the Bonus Agreement Between Ramlall and CloseCall (MD)

"The construction of an undisputed oral contract is for the court to decide as a matter of law." *Marr v. Langhoff,*

322 Md. 657, 667, 589 A.2d 470 (1991) (quoting *American Towing & Lightering Co. v. Baker–Whiteley Coal Co.*, 111 Md. 504, 522, 75 A. 341 (1909)). On the other hand, where the terms of an oral contract are in dispute, the finder of fact must decide what terms were actually agreed upon by the parties. *Service Realty Co. v. Luntz*, 210 Md. 228, 234, 123 A.2d 201 (1956) (internal citation omitted). "[W]here there is some conflict in the testimony as to just what language was used by the contracting parties in making an oral contract, the construction placed upon the terms and conditions of the contract by the parties themselves may be shown and is important." *Id.* at 235, 123 A.2d 201; *See also Son v. Margolius, Mallios, Davis, Rider & Tomar*, 114 Md.App. 190, 213, 689 A.2d 645 (1997) ("[W]hen parties disagree as to the existence or terms of an oral agreement, their conduct and intentions may be employed to determine any ambiguous and unknown provisions of the contract.").

██ CloseCall (DE) argues that construction of the bonus agreement between Ramlall and CloseCall (MD) begins and ends with section 2.14 of the disclosure statement. Ramlall denies that the disclosure statement was a memorialization of his oral contract with CloseCall (MD). Both the parties and the circuit court focused on the meaning of the word "refund" in the disclosure statement. That emphasis was misplaced. As explained, *infra*, section 2.14 of the disclosure statement was a product of the due diligence process; its purpose was to give MVCC an understanding of CloseCall (MD)'s liabilities. It was not intended to be a fully integrated memorialization of the bonus agreement between Ramlall and CloseCall (MD).

The circuit court found the disclosure statement to be dispositive of the disputed oral agreement, and held that Ramlall's bonus was conditioned on CloseCall (MD) receiving a refund payment from Verizon. In so holding, the circuit court erred as a matter of law in disregarding substantial evidence indicating that the disclosure statement was not an accurate representation of the oral agreement between Ramlall and CloseCall (MD), and in construing the oral agreement

as having a bonus conditioned on a refund. Thus, we shall vacate the circuit court's order entering judgment for Close-Call (DE) and remand to that court for further proceedings consistent with our explanation below.

The disclosure statement is evidence of the oral agreement between Ramlall and CloseCall (MD). The record does not reflect any payment from Verizon to CloseCall (MD), and we find no error in the circuit court's holding that "there is no evidence that the refund was paid out." The preceding phrase of the disclosure statement, however, indicates an intention to link the payment of a bonus to any benefit to CloseCall (MD): "The Compensation Committee of CloseCall [ (MD) ] have agreed that, *in the event the disputes were resolved in favor of CloseCall [ (MD) ],* a bonus equal to 10% of the refund shall be paid...." (emphasis added). Thus, the disclosure statement contains inconsistent conditions for payment of the bonus. On the one hand, it sets a broad condition: that the settlement negotiations be resolved in favor of CloseCall (MD). On the other hand, it limits payment of a bonus to the condition of a refund payment from Verizon to CloseCall (MD). There is an ambiguity in the language of section 2.14 of the disclosure statement, and therefore we construe the agreement in light of the extrinsic evidence that surrounded it. *See Service Realty Co.,* 210 Md. at 235, 123 A.2d 201.

Ramlall presented persuasive evidence to support his contention that his bonus agreement with CloseCall (MD) was not conditioned on a "refund" in the strictest sense. First, Ramlall cites a letter from CloseCall (MD) confirming his employment as a "Strategic Advisor" at the rate of $110 per hour. Next, he points to an October 21, 2002 email from Mazerski to Ramlall capping Ramlall's hourly rate at twenty hours per week and instructing him "If you go over—just track and we can either pay you while you are on vacation (you take a day off) or work something out at year end to clean out the hours ... Either way—CloseCall will honor all of your hard work that is much needed."

Ramlall also relies on the testimony of Mazerski, former President and CEO of CloseCall (MD),[8] and Mark Norris, former outsourced CFO of CloseCall (MD). Their testimony reflects that Ramlall's bonus was to be based on "any benefit." When asked to interpret Ramlall's bonus agreement Mazerski testified, "What was promised to Mr. Ramlall, and all three of us, quite frankly, is that any benefit of the bill disputes to CloseCall [ (MD) ], ten percent of that amount would be split three ways between the three of us." Similarly, Norris testified, "Well, what I know, what I'm aware of that I was told was that whatever benefit CloseCall [ (MD) ] received, that there was a bonus of ten percent that would be calculated on that, and split between Mr. Ramlall, Mr. Mazerski, and Mr. Van Allen."

This testimony is consistent with a series of emails entered into evidence between Ramlall, Mazerski, Van Allen, and Norris, in which they discuss their interpretation of the bonus agreement. Though the emails reference section 2.14 of the disclosure statement, they reflect an understanding that the oral agreement conditioned the bonus on any favorable outcome to CloseCall (MD). For example, a June 14, 2006 email from Van Allen to Norris (with copies to Ramlall and Mazerski) states:

> As you may already know, CloseCall and Verizon have reached a settlement over our billing disputes and DSL Issues. Because of this, we can now begin to close out the Verizon billing disputes paragraph listed in section 2.14 of the Merger agreement between CloseCall and MobilePro. Richard Ramlall and I have reached an agreement as to what the payment should be for the two of us, plus Tom Mazerski. Since the billing credits from Verizon total $2,209,886.44, and our settlement payment is $800,000, *we*

---

**8.** Mazerski brought a similar claim against CloseCall (DE) for failure to pay a bonus, and under Mazerski's written employment contract the parties were compelled to arbitrate the claim. Trial counsel for Close-Call (DE) raised this potential conflict of interest, and we note that the circuit court was in the best position to evaluate Mazerski's credibility. *See* Md. Rule 8–131(c).

*received a favorable outcome of $1,409,886.44.* Section 2.14 states that *10% of this amount should be split between Richard, Tom and myself.* (emphasis added).

Ramlall testified that similar email and oral discussions further confirm the above interpretation of the original bonus agreement, but there is no evidence of those discussions in the record. Still, a review of the timing of the original bonus agreement supports such an interpretation.

Ramlall's increased hours were the result of his work on the Verizon billing dispute. Ramlall was one of the leaders of the negotiations, which proceeded under a strategy whereby CloseCall (MD) withheld payments for services Verizon had rendered. Ramlall explained:

> [T]he way normally this works, you make your payments like you do for your regular bills, and then if there is a dispute, then you ultimately win your dispute, they send you a refund check for whatever it was. We were just concerned that because we're a small company having to make payments for what we considered to be, you know, a legitimate dispute, that we took the risk that ultimately we would prevail with them. So the company withheld payments. But it was risky. It was a risk to do that.

This testimony indicates that, when CloseCall (MD) capped Ramlall's hourly compensation at twenty hours per week, Ramlall knew that no matter the outcome of this particular billing dispute, Verizon would not be sending CloseCall (MD) a payment.

It seems unreasonable that Ramlall, knowing full well that CloseCall (MD) had withheld money from Verizon and thus would not be entitled to repayment under any circumstances, would agree to a bonus fee that was contingent on a refund. A contract should not be construed to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties. *Middlebrook Tech, LLC v. Moore,* 157 Md.App. 40, 66, 849 A.2d 63 (2004). Further, courts construe contracts by looking at the whole, and not by focusing on individual words as if in a vacuum.

*Highley v. Phillips,* 176 Md. 463, 472, 5 A.2d 824 (Md.1939) ("A word in a contract, taken by itself, often admits of two meanings when from the whole contract to be interpreted there is no reasonable doubt as to the sense in which the parties used it. In that situation, the particular sense they ascribed to the word when the contract was made must be adopted if it is within the reasonable scope thereof.") (quoting 12 Am.Jur. 1st Contracts § 236).

CloseCall (DE) has received the benefit of the bargain it struck concerning the Verizon billing dispute (because the litigation between CloseCall (MD) and Verizon that was pending at the time of the merger settled in a manner favorable to CloseCall (MD)), and it cannot now refuse payment in return. *See Campbell v. Potash Corp. of Saskatchewan, Inc.,* 238 F.3d 792, 803 (2001). Under the Maryland corporate law and the terms of the merger agreement, CloseCall (DE) unconditionally assumed all debts and liabilities of CloseCall (MD). That one such liability was inaccurately memorialized in an attachment to the merger agreement cannot justify treating it any differently. Consequently, CloseCall (DE) was not entitled to judgment at the close of Ramlall's evidence.

At the May 18, 2010 hearing on summary judgment motions, CloseCall (DE) argued that it was entitled to a number of reductions in the amount from which the ten percent bonus fee is to be derived. Further, it argued that the agreement between Ramlall and CloseCall (DE) lacked essential terms because it did not specify how the ten percent bonus was to be divided among Ramlall, Mazerski, and Van Allen. That evidence has yet to be deduced because the trial was truncated after Ramlall presented his evidence. On remand, the circuit court must decide what terms were actually agreed upon by the parties. *Service Realty Co. v. Luntz,* 210 Md. 228, 234, 123 A.2d 201 (1956) (internal citation omitted).

## CONCLUSION

The circuit court was legally correct in holding that there were no disputed material facts to justify piercing the corpo-

rate veil of CloseCall (DE) to reach MobilePro, and that therefore MobilePro was entitled to judgment as a matter of law. Thus, we hold that the circuit court did not err in granting summary judgment in favor of MobilePro.

By statute, CloseCall (MD)'s obligation to pay the bonus became CloseCall (DE)'s obligation to pay the bonus after the merger. In our *de novo* review of the circuit court's construction of Ramlall's agreement with CloseCall (MD), we hold that the circuit court erred in holding that the bonus was contingent on a refund being paid from Verizon to CloseCall (MD). As such, we vacate the circuit court's entry of judgment in favor of CloseCall (DE) and remand to that court for a factual determination on the merits.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY GRANTING APPELLEE MOBILEPRO'S MOTION FOR SUMMARY JUDGMENT AFFIRMED.**

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY GRANTING APPELLEE CLOSECALL'S MOTION FOR JUDGMENT VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID 50% BY APPELLANT AND 50% BY APPELLEE CLOSECALL.**